United States District Court
Southern District of Texas
**ENTERED**
July 15, 2016
David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| TOTAL GAS & POWER NORTH AMERICA, INC., AARON TRENT HALL, and THERESE NGUYEN TRAN, | § § § § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:16-1250 |
| | § | |
| FEDERAL ENERGY REGULATORY COMMISSION, and CHAIRMAN NORMAN C. BAY, COMMISSIONER CHERYL A. LAFLEUR, COMMISSIONER TONY CLARK, COMMISSIONER COLETTE D. HONORABLE, and ACTING CHIEF ADMINISTRATIVE LAW JUDGE CARMEN A. CINTRON, in their official capacities, | § § § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This declaratory judgment action is before the Court on the Motion to Dismiss [Doc. # 27] filed by Defendants Federal Energy Regulatory Commission ("FERC"), its Commissioners, and its Acting Chief Administrative Law Judge

(collectively, "Defendants").[1]  Plaintiffs Total Gas & Power North America, Inc. ("Total"), Aaron Trent Hall ("Hall"), and Therese Nguyen Tran ("Tran") (collectively, "Plaintiffs") have filed a Motion for Summary Judgment [Doc. # 49].[2]  Essentially, Plaintiffs seek an immediate court ruling that Defendants lack authority to impose a civil penalty for violations of the Natural Gas Act or FERC's rules, regulations, or orders thereunder, and that such penalties must be determined after a jury trial in federal district court.  Plaintiffs also ask for declarations on several constitutional claims.  Plaintiffs do not seek injunctive relief.  Defendants argue that this controversy is not ripe, this Court lacks jurisdiction, and Plaintiffs must litigate the merits before the agency, with a right to judicial review in the court of appeals.

The motions are ripe for determination.  After carefully considering the parties' briefing, oral argument, all matters of record, and the applicable legal authorities, the Court **grants** Defendants' Motion to Dismiss and **denies** Plaintiffs' Motion for Summary Judgment **as moot**.

## I.   BACKGROUND

This declaratory judgment action relates to an ongoing FERC administrative process in which Plaintiffs are respondents.  The following factual and procedural background is undisputed.[3]  FERC alleges that Plaintiffs engaged in an illegal scheme to manipulate natural gas markets from 2009 to 2012.  Plaintiff Total, a

---

[1]   Chairman Norman C. Bay, Commissioners Cheryl A. LaFleur, Tony Clark, and Colette D. Honorable, and Acting Chief Administrative Law Judge Carmen A. Cintron, in their official capacities.

[2]   The Court heard oral argument on the motions on June 24, 2016.  *See* Hearing Minutes and Order [Doc. # 64].

[3]   This background is drawn from Plaintiffs' Amended Complaint [Doc. # 25] and the Order to Show Cause issued by Defendant FERC, *Total Gas & Power North America, Inc., et al.*, 155 FERC ¶ 61,105 (2016) ("Order to Show Cause").

Delaware corporation headquartered in Houston, Texas, is a subsidiary of Total S.A., a French oil and gas company.  Plaintiff Total trades and markets Total S.A.'s production assets in the United States.  Plaintiffs Hall and Tran were employed by Plaintiff Total in Houston as traders between 2009 and 2012.  They are alleged to have engaged "in a cross-market manipulation scheme involving physical trading in one market for the purpose of benefiting related positions in another market" on at least 38 separate occasions.[4]   The exact details of this scheme are not pertinent to the suit before this Court and no party requests a ruling on the veracity of the allegations against Plaintiffs.

Following an investigation from 2012 to 2015, FERC Commissioners issued an Order to Show Cause alleging that civil monetary penalties should be imposed on Plaintiffs for the civil violations alleged in the pending administrative proceedings.[5]   While different units within FERC were evaluating the results of the investigation, Plaintiffs filed this declaratory action through which they challenge the legitimacy of the administrative proceeding on various constitutional and statutory grounds.  Defendants moved to dismiss this action for lack of jurisdiction. Shortly thereafter, Plaintiffs moved for summary judgment on all claims.[6]  For the alternative reasons below, the Court concludes Defendants' Motion should be granted and will dismiss this case without prejudice to Plaintiffs' claims.

---

[4]     Order to Show Cause, *supra* note 3, Appendix A, Enforcement Staff Report and Recommendation, at 1–2.

[5]     The FERC administrative process is described in detail in Section III.A.1, *infra*.

[6]     No discovery has taken place and no factual record has been developed in this case.  Plaintiffs contend that their Motion for Summary Judgment presents legal questions susceptible of resolution without a record.  *See* Motion for Summary Judgment [Doc. # 49], at 1 ("This case presents no material factual dispute.").

## II.   LEGAL STANDARD

### A.   Motion to Dismiss

Defendants move to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[7]   When there is a challenge to the court's subject matter jurisdiction, the party asserting jurisdiction bears the burden of establishing that jurisdiction exists.[8]

### B.   Declaratory Judgment

Plaintiffs bear the burden of establishing that the Court has jurisdiction to render declaratory judgment on their constitutional and statutory claims.   The Declaratory Judgment Act, 28 U.S.C. § 2201, permits a district court "upon the filing of an appropriate pleading, [to] declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  In determining whether to handle a declaratory judgment action, a federal district court must determine (1) whether the declaratory action is justiciable, (2) whether the court has jurisdiction over the case, and (3) whether to exercise its discretion to entertain the action.[9]

---

[7]    *Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014) (quoting *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005)).

[8]    *Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 487 (5th Cir. 2014); *Gilbert v. Donahoe*, 751 F.3d 303, 307 (5th Cir. 2014).

[9]    *See Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000); *see generally* 10B WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2766 (3d ed. 2016).   Many declaratory actions require the district court to determine whether a pending action in state court deprives it of "authority" because any declaratory relief would "be tantamount to issuing an injunction—providing the declaratory plaintiff an end run around the requirements of the Anti-Injunction Act."  *See, e.g.*, *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, (continued…)

A declaratory judgment action is justiciable where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[10]   The declaratory relief requested should "completely resolve" the controversy.[11]   A "declaratory judgment action, like any other action, must be ripe in order to be justiciable."[12]   "Whether particular facts are sufficiently immediate to establish an actual controversy is a question that must be addressed on a case-by-case basis."[13]

The Declaratory Judgment Act does not enlarge the district courts' original jurisdiction; the Act is "procedural only."[14]   There must be an independent basis of jurisdiction for the Court to render declaratory judgment.[15]

If the declaratory judgment dispute is justiciable, the Court has discretion whether to exercise its jurisdiction over the action.[16]   In *St. Paul Insurance Co. v. Trejo*, the Fifth Circuit articulated seven non-exclusive factors to assess whether to

---

(continued…)
776 (5th Cir. 1993).  That inquiry is unnecessary here because the dispute at bar does not concern competing state and federal forums.

[10]   *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

[11]   *Calderon v. Ashmus*, 523 U.S. 740, 747 (1998).

[12]   *Orix Credit Alliance*, 212 F.3d at 896.

[13]   *Id.*

[14]   *Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671 (1950); *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 848 (2014) ("[T]he Declaratory Judgment Act does not 'extend' the 'jurisdiction' of the federal courts.").

[15]   *Skelly Oil*, 339 U.S. at 671; *Harris County Texas v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015).

[16]   *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).

5

retain and resolve the action or to decline jurisdiction.[17]  These factors serve three core values: proper allocation of decision-making, fairness of forum selection, and efficiency.[18]

## III.   ANALYSIS

Plaintiffs request a declaratory judgment that certain aspects of FERC's procedures for the imposition of civil penalties are unauthorized by statute, violate the Appointments Clause of Article II of the United States Constitution,[19] violate the Fifth and the Seventh Amendments to the United States Constitution, and do not comport with the Administrative Procedure Act ("APA").[20]  The Court holds, first, that this dispute is not justiciable and, second, that this Court's jurisdiction over the case is precluded by the comprehensive statutory scheme for administrative decision-making and judicial review specified by the Natural Gas Act of 1938 ("NGA"), 15 U.S.C. § 717 *et seq.*  The Court, finally, in the alternative and in the exercise of its discretion, concludes that it will decline to entertain the declaratory claims asserted.

### A.   The NGA and Plaintiffs' Claims

An overview of relevant provisions of the NGA provides useful context. This section also briefly outlines the declaratory relief Plaintiffs seek.

#### 1.   Overview of the NGA

This case requires interpretation of several provisions of the NGA as amended by §§ 311–318 of the Energy Policy Act of 2005 ("EPAct"), Pub. L. No.

---

[17]     39 F.3d 585, 590–91 (5th Cir. 1994); *see infra* Section III.D, at 49.

[18]     *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 390–91 (5th Cir. 2003).

[19]     U.S. CONST. art. II, § 2, cl. 2.

[20]     5 U.S.C. § 551 *et seq.*

109-58, 119 Stat. 594, 685–93.  The NGA is administered by Defendant FERC.[21]
The ultimate authority within FERC is a commission comprising five
commissioners (the "Commission") appointed by the President of the United
States.[22]

Plaintiffs are alleged to have violated NGA § 4A, 15 U.S.C. § 717c-1, a
provision prohibiting manipulation of natural gas markets, and the FERC rule
promulgated pursuant to this section, 18 C.F.R. § 1c.1.  Section 4A was enacted in
2005 as § 315 of the EPAct, 119 Stat. at 691.  Section 4A provides:

> It shall be unlawful for any entity, directly or indirectly, to use or
> employ, in connection with the purchase or sale of natural gas or the
> purchase or sale of transportation services subject to the jurisdiction of
> the Commission, any manipulative or deceptive device or contrivance
> (as those terms are used in [15 U.S.C. § 78j(b)]) in contravention of
> such rules and regulations as the Commission may prescribe as
> necessary in the public interest or for the protection of natural gas
> ratepayers.  Nothing in this section shall be construed to create a
> private right of action.

A focus of Plaintiffs' claims is § 22 of the NGA, 15 U.S.C. § 717t-1, which
also was enacted in 2005.  *See* EPAct, § 314(b)(1)(B), 119 Stat. at 691.  Section 22
provides for civil penalties for violations of the NGA itself or any Commission
"rule, regulation, restriction, condition, or order" issued thereunder:

**(a)     In general**

> Any person that violates [the NGA], or any rule, regulation,
> restriction, condition, or order made or imposed by the Commission
> under authority of [the NGA], shall be subject to a civil penalty of not

---

[21]     FERC was previously known as the Federal Power Commission ("FPC").

[22]     *See* 42 U.S.C. § 7171.  The four sitting Commissioners, Chairman Norman C.
Bay, and Commissioners Cheryl A. LaFleur, Tony Clark, and Colette D.
Honorable, are named in their official capacities as Defendants .

more than $1,000,000 per day per violation for as long as the violation continues.

**(b)    Notice**

The penalty shall be assessed by the Commission after notice and opportunity for public hearing.

**(c)    Amount**

In determining the amount of a proposed penalty, the Commission shall take into consideration the nature and seriousness of the violation and the efforts to remedy the violation.

The Commission has established an administrative process for proceedings that may result in imposition of civil penalties.[23]   The process potentially comprises several stages: a pre-investigation stage; an investigatory phase; adversarial enforcement proceedings, which may include a hearing; and a final determination of whether civil penalties should be assessed.  FERC may settle with a respondent or terminate a proceeding at any time.  These stages are handled by different offices and personnel at FERC.

More specifically, FERC's Office of Enforcement staff ("Enforcement staff"), in the pre-investigation stage, may commence the administrative process based on referrals from other FERC divisions, referrals from the Commission, self-reporting by an entity or person, or tips from third parties.[24]   Enforcement staff apparently initiated the pre-investigation in this case based on a tip received from a former Total employee.[25]

---

[23]    FERC's regulations include a helpful flowchart of the current process.  *See Statement of Administrative Policy Regarding the Process for Assessing Civil Penalties*, 117 FERC ¶ 61,317, Appendix, at 2 (2006) ("2006 Policy Statement").

[24]    *Revised Policy Statement on Enforcement*, 123 FERC ¶ 61,156, at 7 (2008) ("2008 Policy Statement").

[25]    Order to Show Cause, *supra* note 3, Appendix A, Enforcement Staff Report and Recommendation, at 11–12.

After reviewing available information, Enforcement staff may either terminate the matter or open an investigation.[26]   The investigation includes traditional discovery methods, such as document production and depositions.[27] Enforcement staff may terminate the investigation unilaterally at any time, or may request settlement authority from the Commission.[28]   In the case at bar, settlement discussions between Enforcement staff and Plaintiffs proved unsuccessful.[29]

If the case is not resolved during the investigation stage, Enforcement staff may recommend that the Commission institute enforcement proceedings.   The Enforcement staff first provides its recommended findings of fact and conclusions of law to the respondent, who may submit a response.[30]   The recommendations and any response are submitted to the Commission.[31]   If the Commission determines the matter should be pursued, the Commission issues an "order to show cause and

---

[26]   The Commission has provided Enforcement staff with a list of eleven factors to "determine whether there is a substantial basis for opening an investigation."   *See* 2008 Policy Statement, *supra* note 24, at 9.

[27]   *Id.*, at 10–11; *see also* 18 C.F.R. §§ 1b.2–1b.6.

[28]   2008 Policy Statement, *supra* note 24, at 11–12.

[29]   Order to Show Cause, *supra* note 3, Appendix A, Enforcement Staff Report and Recommendation, at 18.

[30]   *See* 18 C.F.R. § 1b.19; *see also Submissions to the Commission upon Staff Intention to Seek an Order to Show Cause*, Docket No. RM08-10-000, 123 FERC ¶ 61,159 (2008).   In this case, Enforcement staff provided Plaintiffs with the preliminary findings on February 10, 2015, to which Plaintiffs responded on June 5, 2015.   Following the unsuccessful settlement discussions, Enforcement staff provided notice to Plaintiffs of its intention to recommend that the Commission institute enforcement proceedings on November 25, 2015, to which Plaintiffs responded on December 29, 2015.   *See* Order to Show Cause, *supra* note 3, Appendix A, Enforcement Staff Report and Recommendation, at 18.   Shortly thereafter, on January 27, 2016, Plaintiffs filed this declaratory action.

[31]   Enforcement staff submitted its recommendations in this case to the Commission on April 1, 2016.   *See* Order to Show Cause, *supra* note 3, at 2.

notice of proposed penalty," which order gives the respondent an opportunity to explain why it did not violate the NGA or FERC's regulations, rules, or orders, as the Enforcement staff contends, and why proposed civil penalties should not be assessed.[32]   In this case, the Order to Show Cause directed that Plaintiffs "should address any matter, legal, factual, or procedural, that they would urge the Commission to consider in this matter."[33]   The Enforcement staff may then submit a reply for the Commission and respondent's consideration.   Upon the issuance of an order to show cause, involved Enforcement staff members are designated as "non-decisional" and may not advise the Commission on the disposition of the matter.[34]   The Commission issued the Order to Show Cause in this case on April 28, 2016.   Plaintiffs filed a response on July 12, 2016.[35]   Plaintiffs' Answer in the FERC proceeding asserts jurisdictional, constitutional, and APA claims identical to

---

[32]   *See* 18 C.F.R. § 385.209(a)(1).   The statement of issues in an order to show cause is "tentative."   *See id.*, § 385.209(b).

[33]   Order to Show Cause, *supra* note 3, at 4.   The opportunity to address in the response procedural deficiencies of an order to show cause appears to be common FERC practice.   *See, e.g.*, *BP America Inc.*, 144 FERC ¶ 61,100 at 4 (2013) ("In its answer, Respondent should address any matter, legal, factual or procedural, that it would urge the Commission to consider in this matter."); *Amaranth Advisors L.L.C.*, 120 FERC ¶ 61,085 at 76 (2007) ("In any answer, Respondents [are ordered] to address any matter, legal, factual or procedural, that they would urge in the Commission's consideration of this matter."); *see generally* 18 C.F.R. § 385.213(c)(2)(ii) (directing respondent to "[s]et forth every defense relied on" in its response to an order to show cause).

[34]   *See* 2008 Policy Statement, *supra* note 24, at 11–12; *see also* 18 C.F.R. §§ 385.2201–.2202.

[35]   *Answer in Opposition to Order to Show Cause and Notice of Proposed Penalty*, Docket No. IN12-17-000 (July 12, 2016).

the prayers for relief in the Amended Complaint.[36]  To date, Enforcement staff has not filed a reply.[37]

If the Commission is unpersuaded by the submissions to terminate the matter, the Commission will decide what form of hearing is necessary to determine whether the respondent violated the NGA and the amount of civil penalties, if any, to be assessed.  The Commission may receive evidence by conducting a hearing based on written submissions[38] or may direct that a live evidentiary hearing be held before an administrative law judge ("ALJ").[39]  Alternatively, the Commission may conclude that the existing record is sufficient and proceed directly to assessment of a penalty.[40]

If the matter is referred to an ALJ, the ALJ determines whether any violations occurred, sets forth reasoning in an "initial decision," and, if appropriate, recommends a civil penalty.[41]  The Commission has not yet decided what form of hearing will be ordered in this case.

If a hearing is held, the Commission considers the entire record and determines what remedies, including possibly a civil penalty, are warranted.  Possible remedies include disgorgement of profits, compliance plans, and other

---

[36]     *Compare id.*, at 144–59, *with* Amended Complaint [Doc. # 25], at 48–50; *see also infra* note 51.

[37]     *See Errata to Notice of Extension of Time*, Docket No. IN12-17-000 (May 10, 2016) (granting Enforcement staff up to 75 days to reply to Plaintiffs' response to the Order to Show Cause).

[38]     2006 Policy Statement, *supra* note 23, at 9.

[39]     The powers and duties of the ALJ are described in 18 C.F.R. § 385.504.

[40]     2006 Policy Statement, *supra* note 23, at 9.

[41]     *See* 18 C.F.R. § 385.708 (describing the contents of and procedures associated with an "initial decision" by an ALJ presiding over a FERC proceeding).

non-monetary measures.[42]  If warranted, the Commission issues an order assessing a penalty.[43]

The FERC administrative process permits a respondent to seek rehearing before the Commission.[44]  If the respondent does so and is dissatisfied with the result, the respondent may seek review of the issues on which it sought rehearing in the appropriate United States court of appeals.[45]

If the respondent fails to pay the civil penalty after the assessment order has become final, FERC may institute an action in a United States district court to collect the penalty.[46]  FERC also may seek enforcement of its orders or remedies in a United States district court if the respondent fails to comply.[47]

---

[42]  2008 Policy Statement, *supra* note 24, at 14–17.

[43]  2006 Policy Statement, *supra* note 23, at 9; *see* 18 C.F.R. §§ 385.711–.713.

[44]  *See* NGA § 19(a), 15 U.S.C. § 717r(a) ("Any person . . . aggrieved by an order issued by the Commission in a proceeding under this chapter to which such person . . . is a party may apply for rehearing within thirty days after the issuance of such order.").

[45]  NGA § 19(b), 15 U.S.C. § 717r(b), provides in pertinent part:

> Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in [a specified] court of appeals of the United States . . . .  Upon the filing of such petition such court shall have jurisdiction, which upon the filing of the record with it shall be exclusive, to affirm, modify, or set aside such order in whole or in part.  No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do.  The finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive.

[46]  2006 Policy Statement, *supra* note 23, at 9.

[47]  *See* NGA § 24, 15 U.S.C. § 717u; *see also, e.g.*, NGA § 14, 15 U.S.C. § 717m(d) (To enforce a subpoena issued by the Commission against a person, "the
(continued…)

## 2.      The Amended Complaint

Plaintiffs contend that the Commission will overstep its statutory authority by issuing any order that determines that Plaintiffs violated the NGA or any rules, regulations, or orders thereunder.  Plaintiffs rely primarily on a jurisdiction and venue provision, § 24 of the NGA, 15 U.S.C. § 717u,[48] that has remained unchanged since it was enacted in 1938 as part of the original NGA.

Plaintiffs argue that the Commission lacks authority to issue a final order adjudicating whether they violated the anti-manipulation law, NGA § 4A, because this Court has "exclusive jurisdiction of violations" of that statute pursuant to NGA § 24.  Plaintiffs contend that nothing in the civil penalties provision, NGA § 22, enacted in 2005, explicitly authorizes the Commission to proceed further than

---

(continued…)
Commission may invoke the aid of any court of the United States within the jurisdiction of which such investigation or proceeding is carried on, or where such person resides or carries on business . . . .").

[48]      Section 24 of the NGA provides in its entirety:

> The District Courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder.  Any criminal proceeding shall be brought in the district court wherein any act or transaction constituting the violation occurred.  Any suit or action to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder may be brought in any such district or in the district wherein the defendant is an inhabitant, and process in such cases may be served wherever the defendant may be found.  Judgments and decrees so rendered shall be subject to review as provided in sections 1254, 1291, and 1292 of title 28. No costs shall be assessed against the Commission in any judicial proceeding by or against the Commission under this chapter.

"assessing" a penalty, which, Plaintiffs contend, means proposing a penalty, but not issuing a final order reviewable in the court of appeals under NGA § 19(b), 15 U.S.C. § 717r(b).  According to Plaintiffs, the Commission must institute an action in a United States district court to obtain a final decision on whether a violation occurred, and only that district court can authorize the Commission to impose an enforceable penalty.  Plaintiffs accordingly request in the Amended Complaint that this Court issue a declaratory judgment "that NGA Section 24 requires that any proceeding by FERC alleging that Plaintiffs violated the NGA or any rule, regulation, or order thereunder must be adjudicated in the appropriate federal district court, not before the agency."[49]

In their most recently filed memorandum of law and at oral argument, however, Plaintiffs have adjusted that position.  They now concede that FERC has authority to hold some form of hearing before an ALJ,[50] but claim that the Commission lacks the authority under NGA § 22 to issue a final order assessing any penalties that may be proposed in their case.  At oral argument, Plaintiffs noted that, as a practical matter, if the requested declaratory judgment were granted in their favor on their NGA § 24 jurisdictional argument, FERC would have incentive to streamline or truncate the existing administrative processes because many elements of that process would duplicate an eventual *de novo* trial in district court.

Plaintiffs also request a declaration that the current FERC administrative process violates the Appointments Clause, the Fifth and Seventh Amendments, and the APA.[51]  At oral argument, Plaintiffs asserted that their constitutional and APA

---

[49]    Amended Complaint [Doc. # 25], at 48, ¶ 117.

[50]    *See* Reply in Support of Motion for Summary Judgment [Doc. # 60], at 1; *see* NGA § 22(b), 15 U.S.C. § 717t-1(b).

[51]    Plaintiffs' prayers for relief in the Amended Complaint [Doc. # 25] are:

(continued…)

claims are "moot" if the Court grants the declaratory relief sought regarding interpretation of NGA § 24.[52]  Plaintiffs seek no injunctive relief.

There are three threshold questions before the Court: (1) whether the action presents a justiciable controversy ripe for declaratory judgment; (2) whether the

---

(continued…)

(1)    A declaration that "FERC's procedure for appointing its ALJs violates the Appointments Clause" and that "any proceeding by FERC alleging that Plaintiffs violated the NGA . . . must be adjudicated in the appropriate federal district court."  *Id.*, at 48–49, ¶¶ 119–20.

(2)    A declaration that, by "setting the matter for an administrative hearing before an ALJ, subject to de novo Commission review with only deferential review by a court of appeals, FERC's procedures violate Article III and deprive Plaintiffs of their Seventh Amendment right to a civil jury," so "any attempt by FERC to establish that Plaintiffs violated the NGA . . . must be adjudicated in federal district court where Plaintiffs are free to exercise their right to a jury trial."  *Id.*, at 49, ¶¶ 122–23.

(3)    A declaration that "the Commission's track record since 2005 shows an apparent bias against entities similarly situated with Plaintiffs, and in light of the massive penalties that the Commission claims the power to impose, allowing the Commission to set this matter for an administrative hearing before an ALJ would deprive Plaintiffs of a fair trial before an impartial adjudicator in violation of Plaintiffs' Fifth Amendment right to due process."  *Id.*, at 49, ¶ 125.

(4)    A declaration that, to cure any improper *ex parte* communications within FERC, the proceeding be "adjudicated in a federal district court where the right to a jury trial is preserved, or, in the alternative, that under Section 5(d) [of the APA], the Commission must prohibit Commission staff members who engaged in *ex parte* communications with the Enforcement Staff at the investigation stage from participating or advising in the Commission's review of ALJ findings or its assessment of a penalty."  *Id.*, at 50, ¶¶ 128–29.

[52]    *See also* Motion for Summary Judgment [Doc. # 49], at 23 ("To the extent the Court wishes to avoid these constitutional issues, Plaintiffs submit that this case can be decided in their favor on statutory grounds . . . .").

NGA establishes a comprehensive scheme for administrative adjudication and judicial review that precludes this Court from exercising jurisdiction over this action; and (3) whether the Court should exercise its discretion to entertain this declaratory judgment action. For the reasons explained below, the Court holds that the dispute is not justiciable, that jurisdiction is lacking under the NGA, and that, in any event, in its discretion, the Court declines to entertain this action.

### B.   Justiciability

Plaintiffs bear the burden of establishing justiciability.[53] They have failed to carry that burden because their claims would not completely resolve the controversy and because their claims are not ripe.

### 1.   The *ETP* Decision

The parties dispute whether the Fifth Circuit's decision in *Energy Transfer Partners, L.P. v. FERC* ("*ETP*"),[54] controls this case. In *ETP*, the entities subjected to a FERC market manipulation investigation sought Fifth Circuit review after the Commission issued an order to show cause alleging violations of the NGA.[55] The Fifth Circuit concluded that the agency action was not final for the purposes of appellate jurisdiction.[56] Defendants contend that the petitioners in *ETP*, the respondents in the agency proceeding, raised arguments substantively

---

[53]    *See Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993) ("[A] party seeking a declaratory judgment has the burden of establishing the existence of an actual case or controversy.").

[54]    567 F.3d 134 (5th Cir. 2009)

[55]    *Id.*, at 136.

[56]    *Id.*, at 139–44 (applying test derived from *Abbott Labs. v. Gardner*, 387 U.S. 136 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977)). The Fifth Circuit also held that the challenge to FERC's jurisdiction was not an issue within the collateral order doctrine. *Id.*, at 144–45 (applying *Cohen v. Beneficial Indus. Loan Corp*, 337 U.S. 541 (1949)).

identical to the NGA § 24 argument Plaintiffs assert here and thus *ETP* mandates the conclusion that this declaratory action is unripe.[57]  Plaintiffs counter that *ETP* is distinguishable because that case involved an "appeal" from a FERC order to show cause.

The Court agrees with Plaintiffs that the *ETP* ripeness analysis under *Abbott Laboratories* is not dispositive here.  The respective procedural postures of the court proceedings are materially different.  The question of a court of appeals' jurisdiction over a petition for review of an agency's administrative action is materially different from the issue of whether a district court has exclusive original jurisdiction over a declaratory judgment claim challenging the agency's authority to issue orders finding an NGA violation and assessing civil penalties.

The Court next addresses the issue of the jurisprudential effect of the inability of the requested declaratory relief to resolve completely the parties' disputes and then examines whether Plaintiffs' claims meet basic Article III ripeness requirements.  As discussed below, Plaintiffs' claims fail in both respects.

### 2.    Lack of Complete Resolution

Plaintiffs' request for a declaration adopting their interpretation of NGA § 24 prematurely raises an affirmative jurisdictional defense that does not resolve the entire controversy between the parties and thus the claim is not justiciable.  Plaintiffs' other bases for declaratory relief similarly amount to non-justiciable anticipatory defenses that may be raised in the administrative process if applicable.[58]  Success on Plaintiffs' arguments might affect the process for

---

[57]    *See id.*, at 138 ("ETP asserts . . . that it is entitled to a de novo proceeding in a federal district court by virtue of [NGA] § 24 . . . .").

[58]    For instance, Plaintiffs challenge the appointment process for ALJs, the alleged lack of an impartial adjudicator, and the existence of alleged improper communications within FERC.

evaluating FERC's allegations, but would not resolve the merits of those allegations.

In *Calderon v. Ashmus*, the Supreme Court held that a declaratory judgment action was not justiciable in federal court because the claim asserted did not "completely resolve" the parties' dispute.[59]   The *Calderon* court explained that Article III's "case or controversy" requirement was not met because the plaintiff's suit

> does not merely allow the resolution of a 'case or controversy' in an alternative format, . . . but rather attempts to gain a litigation advantage by obtaining an advance ruling on an affirmative defense. . . .   Any judgment in this action thus would not resolve the entire case or controversy as to any [class member], but would merely determine a collateral legal issue governing certain aspects of their pending or future suits.[60]

Complete resolution of the parties' dispute at bar requires adjudication of issues not before this Court, namely, whether civil penalties should be assessed against Plaintiffs for alleged violations of the NGA's prohibition on market

---

[59]   523 U.S. 740 (1998).  The plaintiff, on behalf of a class of inmates, sought a declaratory judgment on the length of the filing period applicable in his state for a federal habeas action.  The plaintiff had neither exhausted remedies available in state court nor filed a federal habeas action.  *Id.*, at 746.

[60]   *Id.*, at 747;  *see also MedImmune*, 549 U.S. at 127 n.4 ("*Calderon* . . . holds that a litigant may not use a declaratory-judgment action to obtain piecemeal adjudication of defenses that *would not finally and conclusively resolve* the underlying controversy." (emphasis in original)); *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1381–82 (10th Cir. 2011); *Jenkins v. United States*, 386 F.3d 415, 418 (2d Cir. 2004); *see generally Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 246 (1952) ("[W]hen the request is not for ultimate determination of rights but for preliminary findings and conclusions intended to fortify the litigant against future regulation, it would be a rare case in which the relief should be granted.").

manipulation.[61]  Even if the Court were to grant the full extent of the declaratory relief Plaintiffs seek here, the question of whether Plaintiffs violated NGA § 4A would remain.[62]  *Calderon* requires dismissal of all of Plaintiffs' claims.

### 3.    Ripeness

"A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical."[63]  While the parties at bar are in an adversarial posture, the issues Plaintiffs seek to address through their claims are largely anticipatory. Indeed, the Amended Complaint is nearly devoid of allegations specific to the parties' dispute and focuses instead on FERC's procedures in the abstract. Plaintiffs raise hypothetical challenges based on an alleged pattern of past FERC practices in other, unrelated cases.[64]

*Interpretation of the "Exclusivity" Language in NGA § 24.*— To the extent Plaintiffs argue that they only seek a declaration regarding the Commission's eventual authority—or lack thereof—to issue a final order, the dispute plainly is not ripe.  FERC may abandon the civil penalty process at any of several remaining

---

[61]    *See Columbian Fin. Corp.*, 650 F.3d at 1381 ("It [is] not proper to limit the declaratory-judgment action to only one issue, however important, in [the] controversy." (citing *Calderon*, 523 U.S. at 746)).

[62]    *See* Amended Complaint [Doc. # 25], at 2, ¶ 3 ("Plaintiffs do not seek to stop FERC from conducting an investigation or otherwise exercising its lawful authority.  Plaintiffs are simply asking the Court to issue a declaratory judgment to protect Plaintiffs' statutory and constitutional rights to have the underlying questions . . . adjudicated in the first instance by a federal district court . . . .").

[63]    *Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008) (quoting *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003)).

[64]    *See Renne v. Geary*, 501 U.S. 312, 320 (1991) ("Respondents' generalized claim that petitioners have deleted party endorsements from candidate statements in past elections does not demonstrate a live controversy.").

steps, and the Commission might decline to issue an order of penalty assessment.[65]
Plaintiffs concede there is no legal basis for this Court to require FERC to alter
these intervening procedures *even if* FERC must eventually prosecute its case *de
novo* in a district court.[66]   Plaintiffs fundamentally seek an advisory opinion on the

---

[65]     *See, e.g.*, *ETP*, 567 F.3d at 141 ("We note that after FERC's allegations that ETP
had violated the [Natural Gas Policy Act ("NGPA")] were heard by an ALJ, the
ALJ dismissed the primary undue-discrimination claim pending against ETP.
FERC then reached a settlement with ETP regarding the NGPA issues.  ETP may
similarly prevail on the merits in the administrative action regarding the NGA,
thereby mooting its judicial challenge.").   Generally, the courts do not
"pessimistically assume[] an adverse ruling" by the agency.  *Rhodes v. United
States*, 574 F.2d 1179, 1181–82 (5th Cir. 1978).

[66]     Plaintiffs' argument that the declaratory judgment sought here will encourage
FERC to change how it structures the remainder of the process is speculative and
outside this Court's purview.

validity of an order the Commission has not yet issued and may never issue.[67]   The Court cannot render such an opinion.[68]

   ***Constitutional and APA Claims.—*** Plaintiffs' constitutional and APA claims also are not ripe.   The Seventh Amendment claim may be mooted if FERC terminates the civil penalty proceeding at any time prior to the issuance of the final order assessing civil penalties.   An ALJ may never be appointed if the Commission elects a hearing on written submissions or no hearing at all.[69]   Plaintiffs request an advisory opinion, not on their dispute, but on the validity of an entire administrative structure based on non-specific allegations.   This remedy is beyond the province of this Court.

---

[67]   At oral argument, counsel for Plaintiffs suggested that *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), permits jurisdiction because the declaratory judgment vehicle inherently contemplates that the natural plaintiff can always elect not to bring suit.   *See also* Response to Motion to Dismiss [Doc. # 35], at 19–20 (discussing *MedImmune*).   *MedImmune* arose in the context of a patent licensing dispute, circumstances materially different from those here.   549 U.S. at 123–24.   The Supreme Court has long recognized the importance of declaratory relief to potentially infringing manufacturers who would otherwise be paralyzed by a patent-holder's refusal to sue.   *See Cardinal Chem. Co.*, 508 U.S. at 95–96, ("[A] patent owner engages in a *danse macabre*, brandishing a Damoclean threat with a sheathed sword. . . .   Before the [Declaratory Judgment] Act, competitors victimized by that tactic were rendered helpless and immobile so long as the patent owner refused to grasp the nettle and sue." (quoting *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 734–35 (Fed. Cir. 1988))).   Plaintiffs, however, have not brought the inverse of the natural action here.   The inverse of the natural action would be a declaration that they did not violate the market manipulation statute and rules thereunder.   Plaintiffs' claims are predicated on whether FERC's administrative proceedings will involve certain procedures.

[68]   *See, e.g.*, *U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 446 (1993) ("[A] federal court [lacks] the power to render advisory opinions." (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1968))).

[69]   Plaintiffs do not allege that FERC to date has deprived them of due process. Instead, the Amended Complaint engages in a general discussion of FERC practices and procedures.

Plaintiffs contend that lack of ripeness of the constitutional claims is irrelevant because a favorable judgment on the interpretation of the exclusive jurisdiction provision in NGA § 24 will moot the rest of their claims.  The Court is unpersuaded.   For example, the claim regarding interpretation of NGA § 24 requests a declaration that the violation be "adjudicated in the appropriate federal district court," but victory on that issue does not resolve the Seventh Amendment request for a jury trial.[70]  And Plaintiffs' request for "*de novo* review" of any FERC penalty assessment raises a range of issues.  It is unclear, for instance, whether the Court would have jurisdiction to reopen the factual record developed in the agency proceeding, an issue that may impact the outcome of Plaintiffs' Appointments Clause, Fifth Amendment, and APA claims.  Therefore, even assuming the NGA § 24 statutory interpretation question were ripe, which it is not, its existence would not cure the jurisdictional infirmities of Plaintiffs' constitutional claims.

### 4.    Conclusion on Justiciability

In sum, Plaintiffs' claims for declaratory relief are not ripe and are not justiciable on several grounds.  Plaintiffs' jurisdictional, constitutional, and APA claims are defenses to acts that FERC has not yet taken and depend on a factual record that has not yet been developed.  The questioned administrative actions are

---

[70]    *Compare* Amended Complaint [Doc. # 25], at 48, ¶ 117 (requesting solely adjudication "in the appropriate federal district court, not before the agency"), *with id.*, at 49, ¶ 123 (requesting adjudication "in federal district court where Plaintiffs are *free to exercise their right to a jury trial*" (emphasis added)).  The right to a jury in court under the Seventh Amendment claim may depend on whether the market manipulation allegations fall within the "public right" exception to the right to a jury trial, *see Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n*, 430 U.S. 442, 450 (1977), a completely different issue from the NGA § 24 statutory interpretation question.  *See Tull v. United States*, 481 U.S. 412, 427 (1987) (rejecting Seventh Amendment challenge to provision of Clean Water Act that assigned calculation of civil penalties to district judge).

not inevitable.  Intervening events in those administrative proceedings may resolve the dispute without a ruling from this Court.

Because doctrines of justiciability and ripeness require case-by-case analysis and can be fluid, and in the interests of completeness and judicial economy given the desirability of prompt resolution of Plaintiffs' declaratory judgment claims, the Court next addresses its jurisdiction under *Thunder Basin Coal Co. v. Reich*.[71]  The Court thereafter evaluates whether to exercise its discretion to decline to entertain the declaratory judgment action under *Wilton v. Seven Falls Co.*[72]

### C.   Jurisdiction

Plaintiffs invoke NGA § 24 as the jurisdictional basis for this Court to render declaratory judgment restricting FERC's authority.  The first sentence of NGA § 24 grants "exclusive jurisdiction" to district courts over (1) "violations" of the NGA and (2) actions "brought to enforce any liability or duty created by" or to "enjoin any violation of" the NGA.[73]  Plaintiffs rely on the words "exclusive jurisdiction of violations."  Defendants counter that the FERC administrative process coupled with judicial review in a United States court of appeals provides the sole avenue for Plaintiffs to press their statutory and constitutional claims.  The Court concludes that it is fairly discernible that Congress intended for the claims Plaintiffs assert to be evaluated through the administrative process with judicial review in the court of appeals.

### 1.   Legal Framework

A "statutory scheme of administrative and judicial review [may] provide[] the exclusive means of review" for statutory and constitutional challenges to that

---

[71]     510 U.S. 200 (1994).

[72]     515 U.S. 277, 286–87 (1995); *see infra* Section III.D.

[73]     *See supra* note 48.

scheme.[74]   The seminal case in this context is *Thunder Basin Coal Co. v. Reich*,[75] which sets out a two-step test for evaluating the exclusivity of a scheme for administrative adjudication followed by judicial review in an Article III court.

"If a special statutory review scheme exists . . . 'it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies.'"[76]   The first step of the *Thunder Basin* inquiry therefore examines whether "the 'statutory scheme' displays a 'fairly discernible' intent to limit [district court] jurisdiction" over the type of case to which statutory or constitutional challenges to an administrative process have been made.[77]

In the first step of the *Thunder Basin* analysis, the Court must examine the statute's text, structure, and purpose.[78]   "[W]e simply ask whether Congress's intent to preclude district court review of the administrative proceeding is 'fairly discernible in the statutory scheme.'"[79]   In *Elgin v. Department of Treasury*, the Supreme Court contrasted the "fairly discernible" intent standard applicable to a scheme that "simply channels judicial review of a constitutional claim to a particular court," with a "heightened showing" required to demonstrate

---

[74]   *Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 2132–33 (2012).

[75]   510 U.S. 200 (1994).

[76]   *Jarkesy v. SEC*, 803 F.3d 9, 15 (D.C. Cir. 2015) (quoting *City of Rochester v. Bond*, 603 F.2d 927, 931 (D.C. Cir. 1979)).

[77]   *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 489 (2010) (quoting *Thunder Basin*, 510 U.S. at 207).

[78]   *See Elgin*, 132 S. Ct. at 2133.

[79]   *Hill v. SEC*, Nos. 15-12831, 15-13738, __ F.3d __, 2016 WL 3361478, at *8 (11th Cir. June 17, 2016) (quoting *Thunder Basin*, 510 U.S. at 207).

congressional intent to preclude entirely judicial review of a constitutional claim. In the latter case, Congress's "intent to do so must be clear."[80]

In the second step of the *Thunder Basin* analysis, the Court evaluates whether the claims raised in the declaratory action are "not of the type Congress intended to be reviewed within [the] statutory structure."[81]  "To unsettle [the] presumption of initial administrative review—made apparent by the structure of the organic statute—requires a strong countervailing rationale."[82]  District court jurisdiction will not be precluded (1) where "a finding of preclusion could foreclose all meaningful judicial review," (2) "if the suit is wholly collateral to a statute's review provisions," and (3) "if the claims are outside the agency's expertise."[83]  These three considerations do not present a "strict mathematical formula."  Instead, they provide "general guideposts" to determine whether the particular statutory or constitutional claims at issue "fall outside an overarching congressional design."[84]

The *Thunder Basin* analysis applies to the NGA because it contains an exclusive statutory scheme for administrative adjudication coupled with judicial review.  Specifically, NGA § 19(a) allows a party "aggrieved" by a Commission order to apply for a rehearing by the Commission.  To the extent the party is unsuccessful on rehearing, NGA § 19(b) permits an appeal to the appropriate

---

[80]     132 S. Ct. at 2132 (quotation omitted).

[81]     *Thunder Basin*, 510 U.S. at 212.

[82]     *Jarkesy*, 803 F.3d at 17 (quoting *E. Bridge, LLC v. Chao*, 320 F.3d 84, 89 (1st Cir. 2003)).

[83]     *Elgin*, 132 S. Ct. at 2136 (quotations omitted).

[84]     *Jarkesy*, 803 F.3d at 17.

25

United States court of appeals.[85]  Courts are unanimous that NGA § 19 precludes district court jurisdiction over challenges to FERC proceedings.[86]  In general, the NGA "does not foreclose all judicial review . . . , but merely directs that judicial review shall occur" in the United States courts of appeals.[87]

## 2. Applicability of the *Thunder Basin* Analysis

Plaintiffs do not squarely address the "fairly discernible" intent standard under *Thunder Basin*.  Plaintiffs instead contend that the phrase "exclusive jurisdiction of violations" in NGA § 24 renders FERC's assessment of civil penalties an exception to the structure for judicial review in NGA § 19.  Noting that a predicate to assessment of a civil penalty pursuant to NGA § 22 is the existence of a violation of the NGA or FERC's regulations, rules or orders, Plaintiffs contend that the Commission lacks authority to make such findings.

---

[85] *See supra* note 45 and accompanying text.

[86] *See, e.g.*, *Atlanta Gas Light Co. v. FPC*, 476 F.2d 142, 150 (5th Cir. 1973) (affirming district court dismissal of declaratory action because, under NGA § 19, "the [FPC] and, on review, the court of appeals were the proper forums"); *see also Am. Energy Corp. v. Rockies Express Pipeline LLC*, 622 F.3d 602, 605 (6th Cir. 2010) ("Exclusive means exclusive, and the [NGA] nowhere permits an aggrieved party otherwise to pursue collateral review of a FERC certificate in state court or federal district court."); *Hunter v. FERC*, 348 F. App'x 592, 593 (D.C. Cir. 2009) ("Congress has vested exclusive jurisdiction in the courts of appeals to review FERC's orders, pursuant to [NGA § 19(b)] . . . ."); *Williams Nat. Gas Co. v. City of Oklahoma City*, 890 F.2d 255, 261 (10th Cir. 1989) ("As the statutory language plainly states, the special judicial review provisions of § 19 are exclusive.  The provisions of § 19 are nearly identical to the judicial review provisions of various other federal regulatory programs.  In each case, these provisions have been interpreted to establish an exclusive scheme of review."); *Consolidated Gas Supply Corp. v. FERC*, 611 F.2d 951, 957–58 (4th Cir. 1979) (NGA § 19(b) "vests exclusive jurisdiction to review all decisions of the Commission in the circuit court of appeals; there is no area of review, whether relating to final or preliminary orders, available in the district court." (citation omitted)).

[87] *See Elgin*, 132 S. Ct. at 2132.

According to Plaintiffs, if Congress intended to empower the Commission to find violations and impose civil penalties when enacting NGA § 22 in 2005, Congress was required specifically to exclude authority to impose civil penalties from § 24's "exclusive jurisdiction" grant to the United States district courts.   Plaintiffs contend Congress failed to do so and thus the district courts, and not FERC, have ultimate civil penalty authority.   Plaintiffs conclude that the *Thunder Basin* analysis is unnecessary because it is identical with the merits of their claim.

Plaintiffs miss the mark.   In effect, Plaintiffs seek to read § 24 in isolation and attempt to imbue that provision, which has been in the NGA since 1938, with far-reaching and unprecedented new meaning.   While interpreted rarely, NGA § 24 and other examples of this genre of jurisdictional statutes[88] have some judicial history.   Nothing in that precedent indicates that NGA § 24 was intended or understood to govern the allocation of responsibilities for factfinding or determination of remedies between the agency and the courts.   In 1940, the Second Circuit explained in *Wright v. Securities and Exchange Commission* that identical "exclusive jurisdiction" language in the Securities Exchange Act of 1934[89] means merely "that all criminal or civil proceedings initiated in the courts for violations of

---

[88]   Although NGA § 24 is one of ten New Deal-era regulatory statutes that include similar language, Plaintiffs' counsel conceded at oral argument that no case law exists in which Plaintiffs' proffered interpretation has been adopted.   *See* International Wheat Agreement Act of 1949, 7 U.S.C. § 1642(e); Securities Act of 1933, 15 U.S.C. § 77v; Trust Indenture Act of 1939, 15 U.S.C. § 77vvv(b); Securities Exchange Act of 1934, 15 U.S.C. § 78aa(a); Investment Company Act of 1940, 15 U.S.C. § 80a-43; Investment Advisers Act of 1940, 15 U.S.C. § 80b-14(a); Connally Hot Oil Act of 1935, 15 U.S.C. § 715j(c); Interstate Land Sales Full Disclosure Act of 1968, 15 U.S.C. § 1719; Federal Power Act of 1935, 16 U.S.C. § 825p; *see also Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. __, 136 S. Ct. 1562, 1572 (2016) (explaining that these statutes should be interpreted consistently).

[89]   Securities Exchange Act § 27, 15 U.S.C. § 78aa(a).

the act must be brought in the courts designated by the section."[90]   The court of appeals added that the "exclusive jurisdiction of violations" language was "not intended to repeal" the statutes authorizing agency proceedings followed by review in a United States court of appeals.[91]   Congress is presumed to have been aware of this interpretation of language identical to NGA § 24 when Congress amended the NGA to add § 22 and the anti-manipulation provision in the EPAct, and did not alter the jurisdictional language in NGA § 24.[92]

As further judicial background, it is noted that the only meaningful application of the phrase "exclusive jurisdiction" in § 24 and parallel New Deal-era statutes pertaining to other federal agencies[93] has addressed the allocation of authority between state and federal courts.[94]   It would therefore be extraordinary to

---

[90]     112 F.2d 89, 95 (2d Cir. 1940).

[91]     *Id.*

[92]     *See, e.g.*, *Silva-Trevino v. Holder*, 742 F.3d 197, 202 (5th Cir. 2014) ("[W]here there exists a longstanding judicial construction, 'Congress is presumed to be aware of the interpretation . . . and to adopt that interpretation [if] it re-enacts that statute without change.'" (quoting *Lorillard v. Pons*, 434 U.S. 575, 580 (1978))).

[93]     *See supra* note 88.

[94]     *See Merrill Lynch*, 136 S. Ct. at 1573 (interpreting narrowly exclusive jurisdiction granted by Securities Exchange Act § 27, 15 U.S.C. § 78a, because "when a statute mandates, rather than permits, federal jurisdiction—thus depriving state courts of all ability to adjudicate certain claims—our reluctance to endorse 'broad readings,' if anything, grows stronger" (citation omitted)); *see also Pan Am. Petrol. Corp. v. Superior Court of Delaware*, 366 U.S. 656, 662–64 (1961) (holding that "exclusive jurisdiction" afforded by NGA § 24 only applied to cases where "it appears from the face of the complaint that determination of the suit depends upon a question of federal law"); *Enable Miss. River Transmission, LLC v. Nadel & Gussman, LLC*, Civ. A. No. 15-1502, 2016 WL 1064640, at *2 (W.D. La. Mar. 14, 2016) ("[T]he Supreme Court has stated that [NGA § 24] does not create jurisdiction, but provides federal exclusivity when federal law creates a cause of action *elsewhere* to enforce provisions of the NGA." (emphasis added) (citing *Pan American*, 366 U.S. at 664)).   Similar jurisdictional provisions replace
(continued…)

repurpose NGA § 24 eight decades later to govern the relationship between federal courts and the agency.

Despite Plaintiffs' lack of attention to *Thunder Basin* and its progeny, the text of NGA § 24 is not sufficiently clear to permit the Court to skip that analysis.[95]

### 3.      First Step of *Thunder Basin* Analysis

Under *Thunder Basin*, allocation of authority between FERC and this District Court regarding determination of violations of the NGA and FERC rulings, as well as imposition of civil penalties, requires consideration of the statute's text, the statute's structure, which includes the text's context, and the statute's purpose.[96]   The issue is whether there are fairly discernible indications of congressional intent in enacting the EPAct in 2005 to employ the existing scheme of FERC's regulatory oversight to phases involving adjudication of violations and imposition of civil penalties.

---

(continued…)

exclusive jurisdiction with *concurrent* jurisdiction for actions "brought to enforce" duties and liabilities created by the respective statute, which further indicates that these provisions address federalism concerns.   *See, e.g.*, Securities Act of 1933, 15 U.S.C. § 77v ("The district courts of the United States . . . shall have jurisdiction of offenses and violations under this subchapter . . . and, *concurrent with State and Territorial courts*, . . . of all suits in equity and actions at law brought to enforce any liability or duty . . . ." (emphasis added)).   Some of these cases concern the district courts' jurisdiction over actions "brought to enforce" duties or liabilities created by the respective act, but the phrase "exclusive jurisdiction" must be interpreted consistently within the same provision.   *See, e.g.*, *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995) ("[I]dentical words used in different parts of the same act are intended to have the same meaning." (citation and quotation omitted)).

[95]   *See also ETP*, 567 F.3d at 146 ("[T]he NGA's statutory scheme is far from clear.").

[96]   *See Elgin*, 132 S. Ct. at 2133.

### a.   Text and Structure

***FERC's Authority in the NGA Text and Structure Prior to the EPAct.***—
The text and structure of the pre-2005 NGA support a finding of congressional
intent that FERC administer the entire process for assessment of civil penalties,
including the predicate of finding a violation of the NGA.  Since 1938, section 14
of the NGA, 15 U.S.C. § 717m, has authorized FERC to undertake investigations
"in order to *determine* whether any person *has violated* or is about to violate any
provisions of this chapter" (emphasis added). Further, section 16 of the NGA, 15
U.S.C. § 717*o*, provides:

> The Commission shall have power to perform any and all acts, and to
> prescribe, issue, make, amend, and rescind such orders, rules, and
> regulations as it may find necessary or appropriate to carry out the
> provisions of [the NGA].

Sections 14 and 16 have been read in combination to permit FERC "to fashion
appropriate remedies for violations of its regulations."[97]  The Supreme Court "has
repeatedly held that the width of administrative authority must be measured in part
by the purposes for which it was conferred" and therefore "[s]urely the
Commission's broad responsibilities . . . demand a generous construction of its
statutory authority."[98]

The NGA also authorizes FERC to hold hearings and provides the
Commission with broad authority to promulgate rules to govern those hearings, in
furtherance of its decision-making goals.[99] These hearings relate to the
Commission's authority under the NGA to make rules and issue orders or

---

[97]     *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 633 F. Supp. 2d 1151, 1166
(D. Nev. 2007).

[98]     *In re Permian Basin Area Rate Cases*, 390 U.S. 747, 776 & n.40 (1968) (citing,
*inter alia*, NGA § 16).

[99]     *See* NGA §§ 15, 16, 15 U.S.C. §§ 717n, 717*o*.

certificates.[100]    The NGA provides clear and comprehensive guidance for conducting agency hearings and providing appellate review.[101]

In contrast, district court involvement under the pre-2005 NGA was narrowly tailored to assisting FERC in performance of its functions, such as enforcement of subpoenas issued by the Commission, requests for emergency injunctive relief by the Commission, and providing a forum for criminal prosecutions and enforcement of duties and liabilities of regulated entities under the NGA once those liabilities have been found by the agency.[102]  It was accepted that the Commission had wide discretion whether to institute such actions.[103]

---

[100]    *See, e.g.*, NGA § 3(e), 15 U.S.C. § 717b(e) (authority to approve or deny construction of LNG terminals); NGA § 4(e), 15 U.S.C. § 717c(e) (authority to determine lawfulness of a rate change); NGA § 5(a), 15 U.S.C. § 717d(a) (authority to investigate and order decrease of certain rates "where existing rates are unjust, unduly discriminatory, preferential, otherwise unlawful or are not the lowest reasonable rates"); NGA § 14(b), 15 U.S.C. § 717m(b) (authority to determine the "adequacy or inadequacy of the gas reserves held or controlled by any natural-gas company").

[101]    *See* NGA §§ 15, 16, 19, 15 U.S.C. §§ 717n, 717*o*, 717r.

[102]    *See* NGA § 14(d), 15 U.S.C. § 717m(d) (To enforce a subpoena against a person issued by the Commission under NGA § 14(c), "the Commission may invoke the aid of any court of the United States within the jurisdiction of which such investigation or proceeding is carried on, or where such person resides or carries on business . . . ."); NGA § 20, 15 U.S.C. § 717s(a) ("Whenever it shall appear to the Commission that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the [NGA]" the Commission may bring an action in "the proper district court of the United States . . . to enjoin such acts . . . ."); NGA § 24, 15 U.S.C. § 717u ("Any criminal proceeding shall be brought in the district wherein any act or transaction constituting the violation occurred."); *id.* ("The District Courts of the United States . . . shall have exclusive jurisdiction . . . of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder.").  Additionally, private parties who have obtained a certificate from FERC related to the
(continued…)

Well prior to Congress' addition of the civil penalty provision to the NGA in 2005, it was established that the Commission had authority to find the existence of violations of the NGA and FERC's rules, regulations, and orders.[104]  For example, the Fifth Circuit repeatedly affirmed the Commission's power to impose various remedies such as disgorgement of profits obtained as a result of violations,[105]

---

(continued…)

construction of natural gas pipelines may institute eminent domain proceedings in district court.  NGA § 8, 15 U.S.C. § 717g(h).

[103]    *See Mesa Petrol. Co. v. FPC*, 441 F.2d 182, 189 (5th Cir. 1971) ("[I]t is of no consequence that there were other avenues which the Commission could have chosen for enforcement, such as an injunction or a criminal proceeding. . . .  The Commission may resort to the courts only if in its discretion it believes the court's help would be necessary to achieve its purposes.").

[104]    *See generally, e.g.*, *Transcont'l Gas Pipe Line Corp. v. FERC*, 998 F.2d 1313 (5th Cir. 1993); *Coastal Oil & Gas Corp. v. FERC*, 782 F.2d 1249 (5th Cir. 1986); *Cox v. FERC*, 581 F.2d 449 (5th Cir. 1978); *Mesa Petroleum*, 441 F.2d 182.

[105]    *See Transcont'l Gas Pipe Line*, 998 F.2d at 1319, 1324 (affirming Commission's finding that natural gas company had violated NGA §§ 4(b), 4(d), and 7, imposition of refund order, and denial of company's request to recoup certain losses from illegal sales via a "passthrough" to its customers); *Coastal Oil & Gas*, 782 F.2d at 1253 (affirming Commission finding that natural gas company had violated NGA § 7 by diverting to intrastate market gas dedicated to interstate market and suggesting equitable remedies, such as "stripping [company] of profits in excess of what it would have made" by selling on interstate market); *Cox*, 581 F.2d at 451 (affirming order requiring company to "return diverted gas in kind to the interstate market," which order notably required the company, "who violated the Act, to bear the burden of post-violation increases in the price of natural gas").

The other courts of appeals also consistently respected FERC's remedial authority with respect to "violations" of the NGA.  *See Transcont'l Gas Pipe Line Corp. v. FERC*, 485 F.3d 1172, 1176 (D.C. Cir. 2007) ("[T]he [NGA] gives FERC broad power to remedy *violations* of the Act." (emphasis added) (citing *Columbia Gas Transmission Corp. v. FERC*, 750 F.2d 105, 109 (D.C. Cir. 1984))); *R.R. Comm'n of Tex. v. FERC*, 874 F.2d 1338 (10th Cir. 1989) (affirming Commission order adopting an ALJ's findings that certain parties had violated the NGA); *Gulf Oil Corp. v. FPC*, 563 F.2d 588 (3d Cir. 1977) (affirming a "refund-recoupment order" as "an appropriate remedy for the *violation* by [a natural gas company] of

(continued…)

although, prior to the EPAct of 2005, the Commission lacked statutory authority to impose civil penalties for these violations.[106]   The Court must presume that Congress was aware of these historical administrative practices.[107]

*Text of the EPAct.*— When read in context of the other NGA sections that had been interpreted to authorize FERC to determine violations and fashion remedies, it is apparent that Congress likely perceived the text of NGA § 22 as sufficient to empower the Commission to determine the existence of violations prior to assessment of civil penalties.[108]   Indeed, the text of the 2005 civil penalty

_____

(continued…)

[NGA §] 7(c) and of the terms of [the company's] certificate" (emphasis added)); *see generally* 2008 Policy Statement, *supra* note 24, at 14–17 (discussing FERC practice of using disgorgement of profits, compliance plans, and other non-monetary measures as remedies for violations).

[106]   *See, e.g.*, *Coastal Oil & Gas*, 782 F.2d at 1253 ("It is well-settled that the Natural Gas Act does not give the Commission the authority to impose civil penalties."). It was recognized that the absence of a civil penalty authority was a gap in the Commission's enforcement powers.   *See S. Union Gas Co. v. FERC*, 725 F.2d 99, 103 (10th Cir. 1984) (explaining that it was "understandable" that the Commission sought "some penalty or reparation" for an action it considered a "gross violation" of the NGA, but that it lacked statutory authority to do so).

[107]   *See, e.g.*, *Silva-Trevino*, 742 F.3d at 202 ("[W]here there exists a longstanding judicial construction, 'Congress is presumed to be aware of the interpretation . . . and to adopt that interpretation [if] it re-enacts that statute without change.'" (quoting *Lorillard*, 434 U.S. at 580)).

[108]   *See Gustafson*, 513 U.S. at 570 (Acts of Congress "should not be read as a series of unrelated and isolated provisions"); *Smith v. United States*, 508 U.S. 223, 233 (1993) ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." (quotation omitted)).   For example, FERC had established authority to impose remedies for violations of NGA §§ 4 and 7.   NGA § 4 does not explicitly reference adjudication of "violations."   Instead, key language in NGA § 4(a) is phrased in the passive voice, similar to that of NGA § 4A.   *Compare* 15 U.S.C. § 717c(a) ("[A]ny such rate or charge that is not just and reasonable *is declared to*

(continued…)

enactment reflects congressional adoption of phrases common in civil penalty provisions in other statutes.  These provisions assume that the power to adjudicate inheres in jurisdiction to "assess."[109]  Section 22 is not unique in its lack of an express reference to the authority to adjudicate.[110]  Further, the 2005 EPAct

---

(continued…)

*be unlawful*." (emphasis added)), *with* 15 U.S.C. § 717c-1 ("*It shall be unlawful . . . to use or employ . . . any manipulative or deceptive device . . . .*" (emphasis added)).  Similarly, NGA § 7 concerns the authority of the Commission to regulate construction, extension, and abandonment of natural gas facilities through orders and certificates of public convenience, but does not explicitly address authority to adjudicate "violations."  *See* 15 U.S.C. § 717f.

[109]  For example, the Federal Deposit Insurance Act ("FDIA") contains a number of civil penalty provisions that are modeled on or cross-reference FDIA § 8(*i*), 12 U.S.C. § 1818(*i*).  FDIA § 8(*i*)(2)(A) provides that any "insured depository institution which, and any institution-affiliated party who" "violates" any of four categories of laws and agreements "shall forfeit and pay a civil penalty."  Subparagraph (E) of that section then provides, "[a]ny penalty imposed . . . may be *assessed* and collected by the appropriate Federal banking agency by written notice" (emphasis added).  Agency rehearing and judicial review are similar to NGA § 19.  *See* FDIA § 8(h)(2), (*i*)(2)(H).  If the agency brings a collection action in district court, "the validity and appropriateness of the penalty shall not be subject to review."  FDIA § 8(*i*)(2)(I)(ii).  Nowhere in this detailed subsection is there a specific statement that the banking agencies have authority to adjudicate the violation.

Plaintiffs' counsel suggested at oral argument that "assess," as used in NGA § 22, should be interpreted to mean "indict."  Counsel cited no other statutes or cases employing that interpretation, and the Court is not aware of any.  This contention is unpersuasive.

[110]  For example, under Securities Exchange Act § 21B, 15 U.S.C. § 78u-2, the SEC is permitted to impose civil penalties in administrative proceedings instituted pursuant to Securities Exchange Act §§ 15(b)(4), 15(b)(6), 15D, 15B, 15C, 15E, and 17A, 15 U.S.C. §§ 78*o*-(b)(4), 78*o*(b)(6), 78*o*-6, 78*o*-4, 78*o*-5, 78*o*-7, and 78q-1.  Although § 15D, 15 U.S.C. § 78*o*-6, explicitly grants rulemaking authority, it does not include specific language authorizing an adjudication of a violation.  Similarly, FDIA § 7(j)(16), 12 U.S.C. § 1817(j)(16) authorizes federal banking agencies to assess and collect civil money penalties from "[a]ny person who violates any provision of [FDIA § 7(j)]."  Although FDIA § 7(j)(15) provides

(continued…)

included a provision that explicitly augmented the district court's injunction authority when the Commission seeks to address market manipulation.[111]   This amendment indicates that Congress was aware in 2005 of the district courts' role in the NGA enforcement scheme, yet did not explicitly assign the district courts a role in the civil penalty process.[112]

As the simple text of NGA § 22 provides, Congress appears to have intended to enlarge through the EPAct amendments FERC's options to remedy violations of any provision of the NGA and the agency's rules, regulations, or orders through

---

(continued…)

for district court jurisdiction to issue injunctive relief against ongoing or threatened violations, there is no explicit assignment of adjudicatory authority for past violations in the entire subsection.  The Court does not rule on whether these statutes provide an adequate basis for the respective agencies to assess civil penalties.  Their existence, however, illustrates that the language in NGA § 22 may simply be the result of common congressional drafting practice and, therefore, should not be given the restricted meaning that Plaintiffs suggest.

[111]   NGA § 20(d), 15 U.S.C. § 717s(d) ("In any proceedings under subsection (a) of this section [§ 717s(a)], the court may prohibit . . . any individual who is engaged or has engaged in practices constituting a violation of section 717c-1 . . . from— (1) acting as an officer . . . of a natural gas company . . . .").

[112]   Plaintiffs argue that Congress impliedly assigned jurisdiction over civil penalty actions to district courts because it did not explicitly authorize FERC to adjudicate "violations."  Plaintiffs have conceded that no authority directly supports their position that jurisdiction over civil penalty proceedings in connection with the NGA necessarily defaults to the district courts.  The Supreme Court's ruling in *Lees v. United States*, 150 U.S. 476 (1893), is not to the contrary.  Of venerable age, this case, commenced in 1888, relates to the relationship between "district courts" and "circuit courts" in the judicial system that preceded the Judiciary Act of 1891.  *Lees* sheds no light on the allocation of civil penalty authority to administrative agencies a century later.

In contrast, the model Defendants contend Congress adopted is common in the modern administrative state.  *See, e.g.*, *Atlas Roofing*, 430 U.S. at 450–51 ("Congress has often created new statutory obligations, provided for civil penalties for their violation, and committed exclusively to an administrative agency the function of deciding whether a violation has in fact occurred.").

35

civil penalties.  There is no indication in the EPAct that Congress intended in 2005 to alter the Commission's role as primary factfinder and reserve to the district courts an oversight or reviewer role.

Moreover, Congress's omission in the EPAct and the NGA of provisions regarding certain procedural issues that typically would arise in a civil penalty proceeding reinforces this interpretation of the NGA's text.

*Venue.—*  Congress gave some indication of intent to preserve in FERC responsibility for finding violations and determining civil penalties because the NGA and the EPAct do not specify venue for civil penalty actions in any particular district court.  On the other hand, allocation of the civil penalty process to FERC as part of the existing administrative process avoids the venue omission.[113]  Notably, in comparison, there are in the 1938 NGA provisions for other agency proceedings that assign venue to certain district courts.  The second and third sentences of NGA § 24 address venue for, respectively, criminal proceedings and actions "brought to enforce any liability or duty created by" or to "enjoin any violation of" the NGA.[114] Although the criminal penalty provision, NGA § 21, 15 U.S.C. § 717t, lacks an internal venue provision, the second sentence in NGA § 24 expressly sites venue

---

[113]   If the hearing is administrative, § 15 of the NGA, 15 U.S.C. § 717n(f), authorizes the Commission to adopt "rules of practice and procedure" to govern hearings, which the Commission has interpreted to include the authority to set the "date, time, and location of [a] hearing."  18 C.F.R. § 385.502(b)(5) (describing contents of written notice of hearing).

[114]   Venue provisions in NGA § 24 are: (1) "Any criminal proceeding shall be brought in the district court wherein any act or transaction constituting the *violation* occurred"; and (2) "Any suit or action to *enforce* any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder may be brought in any such district or in the district wherein the defendant is an inhabitant . . . ."  15 U.S.C. § 717u (emphasis added).  Nowhere do Plaintiffs contend that assessment of civil penalties falls within either of these venue categories.

36

for "criminal proceeding[s]."  The third sentence controls venue for civil actions in district court to "enforce" a "liability or duty created by," or to enjoin violations of the NGA, functions FERC has long performed with district courts' assistance.[115] Defendants have argued persuasively that, after issuance of a final penalty order, FERC may seek judicial enforcement in the district courts through an action "brought to enforce" a "liability" under the NGA,[116] but no liability can exist until after a violation has been found by the Commission.

The absence of express assignment of venue in district court for civil penalty proceedings for violations of the NGA and FERC rules, regulations, and orders is notable also because Congress included reference to venue in district courts in other statutes FERC enforces involving oil and gas industries, specifically, the Federal Power Act ("FPA") and Natural Gas Policy Act ("NGPA").  Indeed, under the FPA and the NGPA, Congress provided that proceedings would be filed in "the appropriate district court" with respect to "affirming the [Commission's] assessment of civil penalties" and evaluation of any substantive challenges thereto by the respondent.[117]  Congress's failure to make any venue designation for civil

---

[115]   *See, e.g.*, *Miss. Power & Light Co. v. Fed. Power Comm'n*, 131 F.2d 148, 150 (5th Cir. 1942) ("The orders which the District Court is given exclusive jurisdiction to enforce or enjoin are definitive orders, establishing rights and duties, such as may be reviewed before the Circuit Court of Appeals or enforced under [FPA §§] 314 and 315, 16 U.S.C.A. § 825m and 825n." (interpreting FPA § 317, 15 U.S.C. § 825p, which is substantively identical to NGA § 24)).

[116]   *See* Response to Motion for Summary Judgment [Doc. # 56], at 12.

[117]   NGPA § 504(b)(6)(F), 15 U.S.C. § 3414(b)(6)(F) ("If the civil penalty has not been paid within 60 calendar days after the assessment order has been made under subparagraph (E), the Commission shall institute an action in the *appropriate district court* of the United States for an order affirming the assessment of the civil penalty." (emphasis added)); FPA § 31(d)(3), 16 U.S.C. § 823c(d)(3) ("If the civil penalty has not been paid within 60 calendar days after the assessment order has been made under subparagraph (A), the Commission shall institute an action in the (continued…)

37

penalty proceedings for violations of the NGA, including market manipulation, indicates Congress did not anticipate district court involvement beyond the task of enforcement.

*Type of Proceeding.*— Congress notably did not include in the EPAct guidance for district courts regarding the procedures applicable in civil penalty proceedings. On the other hand, Congress' addition of civil penalty authority in § 22 to FERC's toolbox was a simple way to augment the agency's prior jurisdiction over violations and resulted in a cohesive administrative and judicial partnership entailing administrative assessment of these penalties. Moreover, in this manner, Congress ensured appellate judicial review through NGA § 19.

A comparison of the NGA to the FPA and NGPA also supports Defendants' position. These latter statutes grant the district court the authority to *review* the law and facts and to "enter a judgment enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part" the assessment of civil penalties.[118] The lack of any similar statutory language in the NGA as amended suggests that Congress intended in 2005 that FERC rely on the established administrative process.[119]

---

(continued…)
*appropriate district court* of the United States for an order affirming the assessment of the civil penalty." (emphasis added)). The respondent can then challenge the civil penalty order in that proceeding and thereby obtain review by the district court. *See infra* note 118 and accompanying text (discussing district courts' authority to enforce, modify, or set aside civil penalty order after review).

[118] NGPA § 504(b)(6)(F), 15 U.S.C. § 3414(b)(6)(F); FPA § 31(d)(3), 16 U.S.C. § 823c(d)(3). This language authorizing review parallels NGA § 19, not NGA § 24. *See* 15 U.S.C. § 717r(b) (granting court of appeals exclusive jurisdiction "to affirm, modify, or set aside" a Commission order "in whole or in part").

[119] At oral argument, Plaintiffs' counsel clarified that Plaintiffs believe a declaratory judgment adopting their interpretation of NGA § 24 would lead FERC to adopt
(continued…)

***Standard of Review.—*** It is undisputed that NGA § 22 authorizes the Commission to conduct a hearing regarding the propriety and amount of civil penalties. Under existing FERC procedures, it cannot be doubted that the Commission may issue an order based on a hearing record. Any such order is channeled into the long-established rehearing and review procedures of NGA § 19(b), pursuant to which the court of appeals applies the "substantial evidence" standard to the Commission's order.

In contrast, attempting to implement Plaintiffs' proposed interpretation of § 24 and § 22 leads to a quandary. The NGA provides no guidance on how a district court is to evaluate the results of the agency hearing or conclusions concerning civil penalty proceedings. Congress provided no guidance as to whether it intended the district court to conduct *de novo* review as sought by Plaintiffs, adopt the substantial evidence standard, or deem the Commission's rulings *prima facie* evidence.[120]

---

(continued…)

procedures similar to those for assessment of civil penalties under FPA § 31(d), 16 U.S.C. § 823c(d), which procedures permit a party to elect *de novo* review by a district court in lieu of agency adjudication. The civil penalty process in the FPA predates the EPAct by almost two decades. If Congress had intended for the FPA's process to apply to NGA § 22, it could have simply copied and pasted the FPA's language into the EPAct. Indeed, as Plaintiffs noted, FPA § 31(c) is substantively identical to NGA § 22. Congress' decision not to include in the NGA the guidance to the district courts provided by FPA § 31c(d) is further evidence that Congress intended that the agency retain the authority to adjudicate civil penalties for violations. *See Turtle Island Restoration Network v. Evans*, 284 F.3d 1282, 1296 (Fed. Cir. 2002) ("When Congress omits from a statute a provision found in similar statutes, the omission is typically thought deliberate." (citing *I.N.S. v. Phinpathya*, 464 U.S. 183, 190 (1984))).

[120] *See, e.g.*, 47 U.S.C. § 407 ("If a carrier does not comply with an order for the payment of money within the time limit in such order, the complainant, or any person for whose benefit such order was made, may file [a suit] in the [appropriate] district court of the United States . . . . [O]n the trial of such suits the

(continued…)

Plaintiffs' request for *de novo* district court review would be legally remarkable and logistically inefficient after a full administrative hearing.[121]   The absence of specific statutory directives regarding the results of the agency hearing required by NGA § 22 is a fair indication of congressional intent in 2005 to integrate the civil penalty process into the existing FERC administrative procedures with judicial review by a court of appeals.

**_Conclusion on Text and Structure._—** Plaintiffs' requests for declarations require this Court to imply procedures, some based on civil penalty provisions in other statutes,[122] to resolve the legislative gaps.  Those requests violate the canon of statutory interpretation that courts do not imply into statutes provisions Congress chose not to include.[123]   The absence of statutory guidance for civil

---

(continued…)
   findings and order of the Commission shall be *prima facie* evidence of the facts therein stated . . . ." (emphasis added)).

[121]   The FPA and the NGPA each provide for *de novo* review of the facts and law involved, but the civil penalty process does not include an agency hearing.  *See* NGPA § 504(b)(6)(E)–(F), 15 U.S.C. § 3414(b)(6)(E)–(F)  (directing Commission to assess penalty without a hearing and, if respondent does not pay, to institute an action in United States district court in which *de novo* review is available); FPA § 31(d)(3)(A), 16 U.S.C. § 823c(d)(3)(A) (directing that, if respondent elects the FPA procedure involving district court review, "the Commission shall [first] promptly assess such penalty" without a hearing before bringing an action in district court).  If a respondent elects an agency hearing under the FPA, then judicial review comprises only an appeal to a court of appeals, which court applies the substantial evidence standard.  *See* FPA § 31(d)(2).

[122]   For instance, regarding venue, Plaintiffs' statutory interpretation claims requests a declaration that the proceeding "must be adjudicated in the *appropriate* federal district court,"  *see* Amended Complaint [Doc. # 25], at 48, ¶ 117.  This language tracks the venue provisions in the FPA and NGPA.  *See supra* note 117.

[123]   *Cox v. City of Dallas, Tex.*, 256 F.3d 281, 310 (5th Cir. 2001) ("Plaintiffs would, in essence, have us read another provision into the RCRA that compels Saitas to act beyond these statutory requirements. We cannot adopt their interpretation of the statute."); *see also Turtle Island Restoration Network*, 284 F.3d at 1296
(continued…)

penalty proceedings in district court, particularly where the NGA carefully delineates all other judicial involvement in the statutory scheme, makes it "fairly discernible" that Congress likely intended the EPAct to strengthen the Commission's civil enforcement powers *within* the administrative process.

### b.   Purpose

Legislative history for the 2005 anti-manipulation and civil penalty provisions, NGA §§ 4A and 22, is virtually non-existent.[124]   Nor is there any reference to NGA § 24's "exclusive jurisdiction" language in the text or legislative history of the EPAct.[125]   Historical context, however, sheds some light on the new provisions' purposes.  Criminal and civil proceedings involving manipulative trade practices in the oil and gas industries in the late 1990s and early 2000s revealed the absence of certain effective law enforcement tools.[126]   Although the Commission

---

(continued…)
("When Congress omits from a statute a provision found in similar statutes, the omission is typically thought deliberate." (citing *Phinpathya*, 464 U.S. at 190)).

[124]   The EPAct of 2005 comprised 530 sections that amended 19 different public laws. The vast legislative history is devoted exclusively to other issues.  Plaintiffs rely on a single *post-enactment* statement by a senator.  That statement is entitled to negligible weight.  *See Barber v. Thomas*, 560 U.S. 474, 486 (2010) ("[T]he Court normally gives little weight to statements, such as those of the individual legislators, made after the bill in question has become law.").

[125]   The only reference to NGA § 24 is a directive to renumber it following the insertion of the civil penalty provision.  *See* EPAct § 314(b)(1)(A), 119 Stat. at 691.

[126]   There grew "concern that the FERC lacked adequate tools to deal with manipulation and deception in the energy markets. . . . Congress sought to meet this challenge by including provisions in the . . . EPAct . . . that granted additional enforcement power to the FERC and added to the array of and increased the existing civil and criminal penalties for manipulative and deceptive conduct." Allan Horwich, *Warnings to the Unwary: Multi-Jurisdictional Federal Enforcement of Manipulation and Deception in the Energy Markets After the Energy Policy Act of 2005*, 27 ENERGY L. J. 363, 367–69 (2006).

had authority to obtain certain monetary remedies prior to 2005, such as disgorgement of profits and refund orders,[127] it was "well-settled that the Natural Gas Act [prior to the EPAct of 2005 did] not give the Commission the authority to impose civil penalties."[128]   Congress' enactment of NGA § 22 appears intended to address the omission of civil penalty authority from FERC's otherwise broad remedial powers to strengthen FERC's regulation of the energy markets that had proved susceptible to abuse.[129]

**c.      Conclusion on "Fairly Discernible" Intent**

The first step of the *Thunder Basin* jurisdictional analysis, an examination of the text, structure, and purpose of the NGA as amended by the EPAct, reveals a fairly discernible congressional intent to build on existing FERC administrative procedures to implement the new civil penalty provisions.   The Court is unpersuaded by Plaintiffs' novel effort to imbue NGA § 24 with meaning untethered to its longstanding purposes evidenced by appellate decisions or meaningful legislative indicators.

**4.      Second Step of *Thunder Basin* Analysis**

The Court turns, in its *Thunder Basin* analysis, to the issue of whether the claims Plaintiffs assert are "of the type Congress intended to be reviewed within the statutory structure."[130]   The Supreme Court instructs courts "to 'presume' that a claim is not confined to administrative channels 'if a finding of preclusion could

---

[127]    *See supra* Section III.C.3.a.

[128]    *See Coastal Oil & Gas*, 782 F.2d at 1253; *S. Union Gas Co.*, 725 F.2d at 103 (holding that Commission lacked authority to impose civil penalty for "gross violation" of the NGA).

[129]    *Cf. S. Union Gas*, 725 F.2d at 103 ("[I]t is for Congress to provide civil penalties not for the Commission to create them.").

[130]    *Free Enterprise Fund*, 561 U.S. at 489.

42

foreclose all meaningful judicial review; if the suit is wholly collateral to a statute's review provisions; and if the claims are outside the agency's expertise.'"[131]   Plaintiffs have offered no meaningful argument addressing these three factors specifically.   In the interests of a complete record, the Court nevertheless addresses them.

None of these three *Thunder Basin* factors weighs in favor of district court jurisdiction over this declaratory action.  The Court finds instructive the rulings by four courts of appeals that applied these factors to similar challenges regarding Securities Exchange Act § 21B, 15 U.S.C. § 78u-2, the statute that empowers the SEC to impose civil penalties in administrative proceedings.[132]   All four courts of appeals found district court jurisdiction precluded by the statutory scheme of SEC administrative adjudication followed by court of appeals' review.[133]   As explained hereafter, the Court concludes that (1) "meaningful judicial review" is available for the claims under NGA § 19, (2) the claims are not "wholly collateral" to the NGA

---

[131]   *Tilton v. SEC*, No. 15-2103, __ F.3d __, 2016 WL 3084795, at *3 (2d Cir. June 1, 2016) (quoting *Free Enterprise Fund*, 561 U.S. at 489).

[132]   *Hill*, 2016 WL 3361478, at *3 (Appointments Clause and Seventh Amendment), *Tilton*, 2016 WL 3084795, at *2 (Appointments Clause); *Jarkesy*, 803 F.3d at 14 (Fifth Amendment, Seventh Amendment, and improper *ex parte* communications); *Bebo v. SEC*, 799 F.3d 765, 768 (7th Cir. 2015) (Fifth Amendment and Article II), *cert. denied* 136 S. Ct. 1500 (2016).  Plaintiffs sought to distinguish the SEC scheme in the first step of *Thunder Basin* on the ground that the SEC's power to adjudicate violations was explicit in the statute.  Because the Court concludes there is a "fairly discernible" intent in the NGA to assess civil penalties via FERC administrative procedures, *see supra* Section III.C.3.c, this quartet of cases constitutes highly persuasive authority for the second step of *Thunder Basin* analysis.

[133]   *See* Securities Exchange Act § 25, 15 U.S.C. § 78y.

statutory review scheme, and (3) FERC's expertise may assist in resolution of Plaintiffs' claims.[134]

### a.    Meaningful Judicial Review

The availability of meaningful judicial review is the most important *Thunder Basin* factor.[135]   There is no contention that any of the issues raised by Plaintiffs cannot be addressed eventually by a United States court of appeals pursuant to NGA § 19.[136]   This is sufficient under *Elgin*, where the Supreme Court "[saw]

---

[134]    *See Elgin*, 132 S. Ct. at 2136.

[135]    *See Hill*, 2016 WL 3361478, at *8 ("We agree with the Second and Seventh Circuits that the first factor . . . is 'the most critical thread in the case law.'" (quoting *Bebo*, 799 F.3d at 774, and citing *Tilton*, 2016 WL 3084795, at *4)).

[136]    The "substantial evidence" standard, as applied under the NGA, is not a rubber stamp of Commission decisions.  The court of appeals must examine:

> (1) whether the Commission abused or exceeded its authority;
> (2) whether each of the essential elements of the order is supported by substantial evidence; and (3) whether the Commission has given reasoned consideration to each of the pertinent factors in balancing the needs of the industry with the relevant public interests.

*Transcont'l Gas Pipe Line*, 998 F.2d at 1320 (citing *Permian Basin Area Rate Cases*, 390 U.S. at 790–92).  All of Plaintiffs' challenges appear cognizable through an NGA § 19 appeal under the first prong of this test.  For example, in *Hunter v. FERC*, 348 F. App'x 592 (D.C. Cir. 2009), the D.C. Circuit held that the district court did not have subject matter jurisdiction over a declaratory judgment action by the respondent in the agency proceeding challenging FERC's jurisdiction.  The respondent contended in his request for declaratory relief that FERC's assertion of jurisdiction impermissibly encroached on the CFTC's statutory exclusive jurisdiction over the alleged acts.  *Id.*, at 592.  Rejecting this use of declaratory judgment procedure, the D.C. Circuit held this jurisdictional question was only reviewable on a petition for review of a final order pursuant to NGA § 19.  *See id.*, at 593.  The respondent successfully pressed his challenge to FERC's jurisdiction in a subsequent NGA § 19 petition.  *See Hunter v. FERC*, 711 F.3d 155 (D.C. Cir. 2013) (holding that "manipulation of natural gas futures contracts falls within the CFTC's exclusive jurisdiction" and nothing in the EPAct permits FERC to regulate this particular futures market).  Precedent therefore demonstrates that NGA § 19 will provide "meaningful judicial review" for
(continued…)

nothing extraordinary in a statutory scheme that vests reviewable factfinding authority in a non-Article III entity that has jurisdiction over an action but cannot finally decide the legal question to which the facts pertain."[137]  This factor strongly disfavors jurisdiction over this declaratory action.[138]

---

(continued…)
Plaintiffs' claims.   Indeed, Plaintiffs have asserted identical jurisdictional, constitutional, and APA challenges in their response to the Order to Show Cause in the administrative proceedings.  *See supra* note 36 and accompanying text.

[137]   *See* 132 S. Ct. at 2138.  *Free Enterprise Fund* is distinguishable from this case. The plaintiffs in that dispute challenged the very existence and structure of the Public Company Accounting Oversight Board ("PCAOB"), a federal government entity subsidiary to the SEC.  The Supreme Court held jurisdiction existed for this challenge, recognizing that not every PCAOB action would result in a "final order."  To obtain judicial review of their claims pursuant to 15 U.S.C. § 78y, which is substantively identical NGA § 19, the Supreme Court concluded that the plaintiffs would have had to violate a PCAOB rule voluntarily so that the SEC eventually would issue a final order.  561 U.S. at 490.  That Court rejected the contention that plaintiffs should have to "bet the farm" to challenge the authority of the agency.  *Id.*  At bar, however, a civil penalty proceeding that may culminate in a final, appealable order already is underway.  *See, e.g.*, *Hill*, 2016 WL 3361478, at *10 ("Unlike the petitioners in *Free Enterprise Fund*, however, the respondents here need not bet the farm to test the constitutionality of the ALJs' appointment process.  On the contrary, the respondents have already taken the actions that allegedly violated securities laws.").

[138]   Plaintiffs discuss the expense of following the FERC procedures, including the potential deprivations of their constitutional and statutory rights.   Those difficulties do not make subsequent judicial review less "meaningful."  *See, e.g.*, *Hill*, 2016 WL 3361478, at *8 ("Enduring an unwanted administrative process, even at great cost, does not amount to an irreparable injury." (citing *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980)).  Plaintiffs may seek a stay of any order imposing penalties pending judicial review pursuant to NGA § 19(b). *See Hill*, 2016 WL 3361478, at *9 (noting that either SEC or court of appeals could stay pending appeal any SEC order assessing civil penalties).

### b.    Wholly Collateral

Plaintiffs' claims are not "wholly collateral" to the NGA statutory scheme for administrative assessment of civil penalties.[139]   In *Free Enterprise Fund v. PCAOB*, the plaintiffs challenged the agency's "existence," which the Supreme Court considered a "general challenge" that was "'collateral' to any . . . orders or rules from which review might be sought."[140]   Here, Plaintiffs' claims are specific challenges to potential administrative procedures Plaintiffs fear they will face.[141] Plaintiffs' claims therefore are not collateral to those proceedings; the claims call into question the administrative procedures.[142]   Plaintiffs' counsel explained at oral argument that a declaratory judgment adopting Plaintiffs' interpretation of NGA § 24 "hopefully" would encourage the agency to alter its procedures.[143]   Suggesting that an agency change its processes during a particular administrative proceeding is not an issue "wholly collateral" for *Thunder Basin* purposes.[144]

---

[139]     *See Elgin*, 132 S. Ct. at 2139–40.

[140]     561 U.S. at 490.  Specifically, the *Free Enterprise Fund* plaintiffs challenged the appointment process for the entire PCAOB.  *See supra* note 137.

[141]     For example, in contrast to *Free Enterprise Fund*, Plaintiffs merely challenge the method of appointment of ALJs, one of whom *may* conduct a hearing, the results of which are subject to review by the entire Commission.

[142]     *See Jarkesy*, 803 F.3d at 23 (explaining that the *Free Enterprise Fund* plaintiffs' claim was "'collateral' to the SEC administrative-review scheme because [those plaintiffs] were not *in* that scheme at all").

[143]     Specifically, Plaintiffs appear to hope the agency will truncate its process and defer to the district court's trial process.

[144]     Some courts have suggested that the "wholly collateral" factor more narrowly focuses on the relationship between the claims in the declaratory action and the merits issues in the agency proceeding.  *See, e.g.*, *Bebo*, 790 F.3d at 774.  The Court agrees with the *Jarkesy* court, however, that challenges to the agency's procedures are not *wholly* collateral because they are "inextricably intertwined with the conduct of the very enforcement proceeding the statute grants the [agency] the power to institute and resolve as an initial matter."  *Jarkesy*, 803 F.3d (continued…)

### c.   Agency Expertise

Finally, FERC's expertise regarding natural gas pricing, gas market manipulation issues, and implementation of the NGA will assist courts' evaluation of Plaintiffs' claims.  The NGA regulates in a highly complex business arena.[145] There are various mechanisms for industry participants to voice concerns on issues that affect them.[146]   The Commission, which administers the entire complex statute, as well as related laws applicable to the oil and gas industry, is in the best position to weigh competing interests and address contested factual matters.  The Commission should interpret its governing statute in the first instance, and do so in light of specific facts determined after the detailed review contemplated by the legislative scheme.[147]

---

(continued…)

at 23.    *Calderon* is instructive here.  The "wholly collateral" claim in *Free Enterprise Fund* completely resolved the controversy in that case.  *See supra* note 137.  "Wholly" appears to be directed at preventing piecemeal litigation outside the administrative process on non-substantive issues that do not *resolve* a case. *See supra* Section III.B.2.

Even if the "wholly collateral" factor were interpreted more narrowly and Plaintiffs' issues met that formulation this factor, it would not outweigh the presence of meaningful judicial review for all of Plaintiffs' claims.  *See Bebo*, 799 F.3d at 774 ("[T]he Supreme Court has never said that any of [the *Thunder Basin* factors] are sufficient conditions to bring suit in federal district court under § 1331.").

[145]   *See, e.g.*, 2008 Enforcement Statement, *supra* note 24, at 19.

[146]   For example, the 2008 Policy Statement was the result of a conference with and comments by industry stakeholders.  *See id.*, at 2.

[147]   Plaintiffs may raise their challenges within the administrative process without adversely affecting other rights under FERC regulations.  The Commission has clarified that "a subject's good faith exercise of its rights under the relevant statutes and [FERC] regulations . . . will not cause the subject of an investigation to forego possible credit for exemplary cooperation."   2008 Enforcement Statement, *supra* note 24, at 8.

FERC's expertise is particularly relevant to Plaintiffs' Fifth Amendment and APA claims. Plaintiffs' Fifth Amendment claim, *inter alia*, accuses FERC of bias against private parties in civil penalty proceedings. No court can evaluate such a claim without development of a detailed factual record. Plaintiffs' other procedural claims will benefit from a full record regarding highly technical and complex matters, such as the market manipulation allegations in this case.[148] Regarding Plaintiffs' Appointments Clause and Seventh Amendment claims, these constitutional questions may become moot if FERC abandons the charges against Plaintiffs.[149] Otherwise, Plaintiffs will have the opportunity to raise these two challenges without interrupting the pending administrative proceeding.[150] Thereafter, judicial review pursuant to NGA § 19 is available.

### 5.   Conclusion on *Thunder Basin* Analysis

The NGA contains a comprehensive scheme for administrative adjudication followed by judicial review. The first step of the *Thunder Basin* analysis reveals a fairly discernible intent in the text, structure, and purpose of the NGA to place within that administrative process the determination of violations and, if appropriate, assessment of civil penalties. The second step of the *Thunder Basin*

---

[148]    These principles apply to Plaintiffs' arguments that FERC is acting as both prosecutor and judge. FERC's published procedures include mechanisms for walling off prosecutorial staff from adjudicatory staff. Indeed, FERC has published a *Notice of Designation of Commission Staff as Non-Decisional* in Plaintiffs' case before the Commission. *See* Appendix to Response to Motion for Summary Judgment [Doc. # 56-1], at 3.

[149]    *See, e.g.*, *Hill*, 2016 WL 3361478, at *12.

[150]    Therefore, even regarding these two claims, this factor does not outweigh the "meaningful judicial review" and "wholly collateral" factors. *See Bebo*, 799 F.3d at 774 ("[T]he Supreme Court has never said that any of [the *Thunder Basin* factors] are sufficient conditions to bring suit in federal district court under [28 U.S.C.] § 1331.").

analysis establishes that Plaintiffs' challenges to FERC's administrative processes for assessment of civil penalties are not of a type Congress intended to exclude from the scheme for judicial review established by NGA § 19.  The claims may be reviewed by an Article III court through a petition for review if, as, and when Plaintiffs are subject to an "order or action" of the Commission.[151]  Finally, the claims are not collateral and the claims' development will benefit from FERC's expertise.

### D.   Discretionary Analysis Applicable to Action Seeking Solely Declaratory Relief

Even if the controversy is justiciable and even if the Court has jurisdiction over Plaintiffs' claims, the Court has wide discretion regarding whether to decide Plaintiffs' declaratory judgment action.[152]  The Court, after careful consideration, declines to entertain Plaintiffs' claims.

The Fifth Circuit requires a district court to consider a non-exclusive list of seven factors, commonly known as the *Trejo* factors, in evaluating whether to hear

---

[151]   This conclusion is consistent with the general principle that an erroneous jurisdictional ruling by an agency—or district court—must await review on appeal from a subsequent final order or judgment.  *See Hunter*, 348 F. App'x at 594 ("The jurisdictional determination in the administrative proceeding is not collateral but is a 'step toward' the decision on the merits." (citing *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 246 (1980))); *see also ETP*, 567 F.3d at 146 ("The proper construction of the NGA must await resolution when and if the Commission determines that the NGA has been violated and assesses a penalty").

[152]   *See, e.g.*, *Wilton*, 515 U.S. at 286–87 ("Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants. . . . The statute's textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface.").

49

a declaratory judgment suit.[153]   The *Trejo* factors, devised in the context of a federal declaratory judgment suit and a state case, are:

(1)   whether there is a pending state action in which all of the matters in controversy may be fully litigated;

(2)   whether the plaintiff filed suit in anticipation of a lawsuit filed by defendant;

(3)   whether the plaintiff engaged in forum shopping in bringing suit;

(4)   whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;

(5)   whether the federal court is convenient forum for the parties and the witnesses;

(6)   whether retaining the lawsuit would serve the purposes of judicial economy; and

(7)   whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.[154]

These factors are sometimes grouped into three categories: allocation of decision-making authority between two jurisdictions, fairness to the parties, and efficiency.[155]

---

[153]   *Sherwin-Williams*, 343 F.3d at 388; *Trejo*, 39 F.3d at 590–91.

[154]   *Trejo*, 39 F.3d at 590–91.

[155]   *Sherwin-Williams*, 343 F.3d at 390–91.  Plaintiffs forego analysis of the *Trejo* factors in favor of addressing the three broad categories outlined in *Sherwin-Williams*.  *See* Response to Motion to Dismiss [Doc. # 35], at 22–24.  Under the first and second categories, Plaintiffs refer to their statutory interpretation argument as grounds for finding that decision-making authority was properly allocated to this Court and that FERC has unfairly engaged in forum-shopping by ignoring NGA § 24.  The Court will review each factor in light of Plaintiffs' contentions.

The case at bar involves the weighing of factors as applied to a proceeding before an administrative agency and a federal court, rather than the traditional pairing of a state and federal court. The *Trejo* factors therefore require adaptation. Rather than concerns of federal comity vis-à-vis state decision-making, the balancing here focuses on the important goal of judicial deference to agency proceedings.[156]

In summary, the Court finds that the first, second, third, fourth, and sixth *Trejo* factors weigh in favor of abstention, the fifth factor weighs modestly against abstention, and the seventh factor is inapplicable.

***1. Pending Parallel Proceeding.***— The principle that a declaratory action should not interfere with parallel proceedings applies to the relationship between federal administrative agencies and district courts. In *Public Service Commission of Utah v. Wycoff Co.*, the Supreme Court refused the plaintiff's request for a declaration that it was engaged in interstate commerce and therefore beyond the jurisdiction of the state agency.[157] The Supreme Court explained:

> Even when there is no incipient federal-state conflict, the declaratory judgment procedure will not be used to preempt and prejudge issues that are committed for initial decision to an administrative body or special tribunal any more than it will be used as a substitute for statutory methods of review. It would not be tolerable, for example, that declaratory judgments establish that an enterprise is not in interstate commerce in order to forestall proceedings by the National Labor Relations Board, the Interstate Commerce Commission or

---

[156]   It is noted that, generally, public policy and deference to agency processes counsel in favor of permitting FERC to address its own jurisdiction in the first instance, and to address the merits of other claims, as needed. *See generally, e.g.*, *Distrigas of Mass. Corp. v. Boston Gas Co.*, 693 F.2d 1113 (1st Cir. 1982) (Breyer, J.) (invoking doctrine of primary jurisdiction to permit FERC to rule on the meaning of natural gas tariffs that were the subject of a private dispute).

[157]   344 U.S. 237, 244 (1952).

many agencies that are authorized to try and decide such an issue in the first instance.[158]

Plaintiffs' threshold issue, pursuant to NGA § 24, is whether only a district court may make the final findings of a violation of the NGA and appropriateness of any civil penalties. On this statutory interpretation question, Plaintiffs may obtain judicial review after completion of the administrative process. This request for preemptive judicial consideration of the agency's jurisdiction contravenes *Wycoff*. The same reasoning applies to Plaintiffs' attempt to invalidate the Commission's procedures on constitutional bases or under the APA before any adverse findings have been made.

**2. *Anticipatory Lawsuit*.**— This declaratory action has some features of anticipatory litigation. Plaintiffs filed this case on January 27, 2016, shortly after FERC's Enforcement staff informed them of its decision to recommend that the Commission pursue civil penalties.[159] FERC has not yet commenced adjudicatory administrative proceedings, such as an ALJ hearing or a hearing on written submissions. Plaintiffs seek to avoid these administrative steps by coming to district court. Plaintiffs' claims are premature. Not only is there a possibility that Plaintiffs' response to the Order to Show Cause may persuade the agency to abandon the civil penalty process, but Plaintiffs' jurisdictional, constitutional, and APA claims can be addressed by a court of appeals on review of any final agency action.

---

[158]   *Id.*, at 246; *see also id.*, at 248 ("Respondent here has sought to ward off possible action of the petitioners by seeking a declaratory judgment to the effect that he will have a good defense . . . .").

[159]   The suit was filed two months prior to the official communication of that recommendation to the Commission and three months before the Commission issued the Order to Show Cause. *See supra* notes 30–31.

*3.  Forum Shopping.*— The essence of Plaintiffs' claims is that a district court forum would be more favorable than the agency process.[160]  Plaintiffs express preferences for a jury and for other procedural and evidentiary rules that apply in district court.  These preferences are tell-tale signs of forum shopping.[161]

*4.  Possible Inequities.*— It would be inequitable for Plaintiffs to "gain precedence" in time and forum here by bypassing the established processes for consideration of the claims asserted.  FERC's administrative adjudicatory process is not yet underway because FERC's procedures have afforded Plaintiffs repeated opportunities to respond to Enforcement staff findings and, now, the Commission's Order to Show Cause.[162]  Plaintiffs have used the time intended for a response to the administrative charge to file a preemptive strike in district court requesting adjudication of jurisdictional and procedural issues prior to the Commission fully considering these matters or assessing the merits of highly technical and complex charges and Plaintiffs' defenses.[163]

---

[160]    *See generally* Amended Complaint [Doc. # 25], at 1–6, ¶¶ 1–12.

[161]    *See, e.g., Sherwin-Williams*, 343 F.3d at 397 (discussing *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599 (5th Cir. 1983), as an example of impermissible "procedural fencing" because the declaratory plaintiff filed his action in Texas to obtain more favorable choice of law rules and substantive law).

[162]    *Cf. Sherwin-Williams*, 343 F.3d at 397 n.7 ("Courts have found impermissible 'procedural fencing' when the declaratory judgment plaintiff brings the declaratory judgment action before the declaratory defendant is legally able to bring a state action."); *see also 909 Corp. v. Vill. of Bolingbrook Police Pension Fund*, 741 F. Supp. 1290, 1293 (S.D. Tex. 1990) (Hittner, J.) ("Application of the first-filed rule could penalize the [declaratory judgment defendant] for its attempt to make a good faith effort to settle out of court.").

[163]    Plaintiffs were directed to "address any matter, legal, factual, or procedural, that they would urge the Commission to consider in this matter" in their response to the April 28, 2016 Order to Show Cause, *supra* note 3, at 4.  That response, filed on July 12, 2016, which includes identical jurisdictional, constitutional and APA

(continued…)

***5. Convenience of the Forum.—*** There is no contention that this Court is an inconvenient forum for either party regarding the declaratory judgment rulings. This factor arguably weighs in favor of the Court's retention of this declaratory action.

***6. Judicial Economy.—*** Judicial economy favors declining to entertain this case.  At this juncture in this declaratory judgment action, the parties primarily dispute the Commission's authority to issue orders finding violations and assessing penalties.  Plaintiffs do not challenge the agency's authority to hold some form of hearing and to propose penalties if warranted.  It is possible that the dispute will be resolved before the Commission issues any final order.  Further, there is no dispute that Plaintiffs' issues could be addressed by the court of appeals on review of a Commission final order pursuant to NGA § 19.  If Plaintiffs were to prevail in this declaratory judgment action, an as yet undefined judicial proceeding would be required, possibly with factfinding by a jury.   Not only would this Court's involvement at this time not save the parties expense, it likely would involve duplicative proceedings that increase the financial burden on all concerned.

***7. State Judicial Decree.—*** There is no state law issue in the current case. This factor is neutral in the *Trejo* analysis and the Court does not give it weight.

***Conclusion on the*** **Trejo** ***Factors.—*** The *Trejo* factors weigh against this Court's entertaining this declaratory judgment action.

## IV.   <u>CONCLUSION</u>

Based on the foregoing analysis, the Court concludes that it cannot and should not entertain Plaintiffs' action for a declaratory judgment.  At least three

---

(continued…)

claims, will not be ripe for review until the Enforcement staff files a reply.  *See supra* notes 35–37 and accompanying text.

different justiciability or jurisdictional doctrines support dismissal of this action. Each of these doctrines revolves around the central theme that, absent extraordinary circumstances, Article III courts should not interfere with ongoing administrative proceedings. This principle is particularly relevant where the challenge is to agency processes still in their early stages.

The Court neither endorses nor criticizes FERC's current procedures. Plaintiffs' prayer to halt or change those procedures prior to the review available in the administrative scheme after issuance of a final agency order must be addressed to Congress.[164]  It is therefore

**ORDERED** that Defendants Federal Energy Regulatory Commission, Chairman Norman C. Bay, Commissioners Cheryl A. LaFleur, Tony Clark, and Colette D. Honorable, and Acting Chief Administrative Law Judge Carmen A. Cintron's Motion to Dismiss the Amended Complaint [Doc. # 27] is **GRANTED**. It is further

**ORDERED** that Plaintiffs Total Gas & Power North America, Inc., Aaron Trent Hall, and Therese Nguyen Tran's Motion for Summary Judgment [Doc. # 49] is **DENIED as moot**.

A separate final order will be entered.

SIGNED at Houston, Texas, this **15**[th] day of **July, 2016**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE

---

[164]   *See ETP*, 567 F.3d at 146 ("Congressional action to chart with clarity the desired course of proceedings [under the NGA] would not be unwelcome.").