United States District Court
Southern District of Texas
**ENTERED**
September 14, 2016
David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| TOTAL GAS & POWER NORTH AMERICA, INC., AARON TRENT HALL, and THERESE NGUYEN TRAN, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 4:16-1250 |
| FEDERAL ENERGY REGULATORY COMMISSION, and CHAIRMAN NORMAN C. BAY, COMMISSIONER CHERYL A. LAFLEUR, COMMISSIONER TONY CLARK, COMMISSIONER COLETTE D. HONORABLE, and ACTING CHIEF ADMINISTRATIVE LAW JUDGE CARMEN A. CINTRON, in their official capacities, | § § § § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This declaratory judgment action is before the Court on the Motion to Alter or Amend Judgment or for Leave to File Second Amended Complaint ("Reconsideration Motion") [Doc. # 73] filed by Plaintiffs Total Gas & Power North America, Inc. ("Total"), Aaron Trent Hall ("Hall"), and Therese Nguyen Tran ("Tran") (collectively, "Plaintiffs"). Defendants Federal Energy Regulatory Commission ("FERC"), its Commissioners, and its Acting Chief Administrative

Law Judge (collectively, "Defendants")[1] filed a Response ("Reconsideration Response") [Doc. # 76], to which Plaintiffs replied ("Reconsideration Reply") [Doc. # 77].   Plaintiffs seek reconsideration of the Court's holdings in the Memorandum and Order issued on July 15, 2016 ("Opinion") [Doc. # 68] that this controversy is not justiciable, that this Court lacks subject matter jurisdiction under the Natural Gas Act ("NGA"),[2] and that the Court, in its discretion, declines to entertain the declaratory judgment action.

After carefully considering the parties' briefing, oral argument, all matters of record, and the applicable legal authorities, the Court **denies** Plaintiffs' Reconsideration Motion.

## I.  LEGAL STANDARD

Rule 59(e) permits a litigant to file a motion to alter or amend a judgment.[3] Reconsideration of a judgment is an "extraordinary remedy that should be used sparingly."[4]   A motion for reconsideration "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before

---

[1]     Chairman Norman C. Bay, Commissioners Cheryl A. LaFleur, Tony Clark, and Colette D. Honorable, and Acting Chief Administrative Law Judge Carmen A. Cintron, in their official capacities.

[2]     Natural Gas Act of 1938 ("NGA"), 15 U.S.C. § 717 *et seq.*

[3]     FED. R. CIV. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.").

[4]     *Waites v. Lee County, Miss.*, 498 F. App'x 401, 404 (5th Cir. Nov. 26, 2012) (quoting *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004)).

the entry of judgment."[5]  Instead, Rule 59(e) serves the narrow purpose of allowing a party to bring errors or newly discovered evidence to the Court's attention.[6]

A litigant seeking relief under Rule 59(e) "must clearly establish either a manifest error of law or fact or must present newly discovered evidence."[7]  A Rule 59(e) motion "cannot be used to argue a case under a new legal theory."[8] Moreover, "an unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration."[9]

## II.   ANALYSIS

The Court assumes familiarity with the Opinion issued in this case on July 15, 2016, which explains the relevant facts and terminology.  The Court first examines Plaintiffs' arguments in favor of altering or amending the Opinion.  The Court concludes that these arguments lack merit.  The Court then evaluates Plaintiffs' request to file a second amended complaint and holds that the proposed amendment would be futile.

Preliminarily, the Court rejects Plaintiffs' objection that the Court relied on arguments not asserted by Defendants.  The Court is bound to scrutinize its subject

---

[5]   *In re Deepwater Horizon*, 785 F.3d 986, 992 (5th Cir. 2015) (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004)).

[6]   *See In re Rodriguez*, 695 F.3d 360, 371 (5th Cir. 2012) (citing *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)).

[7]   *Balakrishnan v. Bd. of Supervisors of La. State Univ. & Agr. & Mech. Coll.*, 452 F. App'x 495, 499 (5th Cir. 2011) (citing *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) (quotation marks and citation omitted)).

[8]   *Id.* (citing *Ross*, 426 F.3d at 763).

[9]   *Templet*, 367 F.3d at 479 (citing *Russ v. Int'l Paper Co.*, 943 F.2d 589, 593 (5th Cir. 1991)); *see also Tate v. Starks*, 444 F. App'x 720, 729 (5th Cir. 2011).

matter jurisdiction, even if the issue must be raised *sua sponte*.[10]  Plaintiffs bear the burden of establishing subject matter jurisdiction.[11]  Plaintiffs have failed to do so. Further, Plaintiffs' additional arguments raised in their Reconsideration Motion are unavailing.  As explained below, Plaintiffs have not met their burden under Rule 59(e) to demonstrate that the Court committed a "manifest error of law" in the Opinion.

A.    <u>Justiciability</u>

1.    **The Court Did Not Misapply *Calderon v. Ashmus***

Plaintiffs argue that if the Court renders declaratory judgment in their favor on interpretation of NGA § 24,[12] the "exclusive jurisdiction" provision, then the "entire controversy" will be resolved in this Court.[13]  Plaintiffs contend that *Calderon v. Ashmus* does not bar this suit.[14]  The Court is unpersuaded.  Plaintiffs' Amended Complaint[15] raises only jurisdictional and procedural issues regarding FERC's determination of claims of NGA violations by Plaintiffs Total, Hall, and Nguyen.  Plaintiffs seek a ruling on *where* and *how* the merits will be litigated, but

---

[10]    *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230–31 (1990) ("Although neither side raises the issue here, we are required to address the issue even if the courts below have not passed on it, and even if the parties fail to raise the issue before us.  The federal courts are under an independent obligation to examine their own jurisdiction . . . ." (citations omitted)).

[11]    *Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 487 (5th Cir. 2014); *Gilbert v. Donahoe*, 751 F.3d 303, 307 (5th Cir. 2014).

[12]    15 U.S.C. § 717u.

[13]    Recon. Reply [Doc. # 77], at 3.

[14]    523 U.S. 740 (1998).

[15]    The Court addresses separately the Second Amended Complaint that Plaintiffs contend will cure the jurisdictional defect under *Calderon*.  *See infra* Section II.D.

not on the merits themselves.[16]  Under *Calderon*, these issues are not the proper subject of a declaratory judgment because they merely "govern[] certain aspects of . . . pending or future suits."[17]

The *Calderon* defect in Plaintiffs' claims further underscores the Court's previous conclusion that Plaintiffs' requested declaratory judgment is a request for an advisory opinion.[18]  FERC has not initiated a federal court proceeding against Plaintiffs on the merits of the charges of NGA violations or for enforcement of a civil penalty order.  Nor does Plaintiffs' requested judgment immediately obligate

---

[16]     *See* Amended Complaint [Doc. # 25], at 2, ¶ 3 ("This lawsuit is brought to prevent FERC from violating Plaintiffs' constitutional and statutory rights to a fair hearing *when* they defend themselves against FERC's allegations.  Plaintiffs do not seek to stop FERC from conducting an investigation or otherwise exercising its lawful authority." (emphasis added)).  The Court addresses Plaintiffs' proposed Second Amended Complaint in Section II.D, *infra*.

[17]     523 U.S. at 747.  The Fifth Circuit's ruling in *In re El Paso Refinery, LP*, 302 F.3d 343, 349 n.4 (5th Cir. 2002), is inapposite.  In that case, the court rendered declaratory judgment on the meaning of a contract relevant to the parties' dispute.  The appellants raised an "entire controversy" argument with regard to the court's *exercise of discretion* to entertain the declaratory judgment action.  *Id.* ("Texaco argues that the bankruptcy court *abused its discretion* in not dismissing RHC's declaratory action, because this case will not resolve the entire controversy between the parties." (emphasis added)).  The Fifth Circuit neither addressed whether the limited scope of the declaratory relief created a *jurisdictional* issue, nor cited *Calderon*.  Instead, the Fifth Circuit cited a section of a treatise relating to the discretion of a court to hear a declaratory judgment action.  *See id.* (citing CHARLES WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FED. PRAC. & PROC. § 2759 (3d ed. 1998)).  The Court notes that the current edition of this section also does not cite *Calderon*.  *See* THE LATE CHARLES ALAN WRIGHT ET AL., FED. PRAC. & PROC. § 2759 (4th ed. 2016); *see also id.*, n.6 (citing *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383 (5th Cir. 2003), for the proposition that "[t]he Declaratory Judgment Act confers discretion on the courts rather than an absolute right on a litigant").  *In re El Paso Refinery* therefore is not probative regarding the application of *Calderon* to this case.

[18]     *See* Opinion [Doc. # 68], at 20–21.

FERC to litigate in this Court.[19]  Plaintiffs' claims merely seek rulings on whether this Court would have exclusive jurisdiction at a later point in the civil penalty dispute and on challenges to anticipated administrative procedures.  These rulings would, at best, result in a free-standing final judgment on jurisdiction or anticipatory rulings on constitutional and statutory questions.[20] Such rulings would be incompatible with the classification of jurisdictional and procedural questions as interlocutory issues.  *Calderon* prevents this result by restricting use of the Declaratory Judgment Act to issues that resolve a full controversy.

## 2.    Plaintiffs' Claims Are Not Ripe

Plaintiffs argue that the Amended Complaint's request for a declaration on the meaning of NGA § 24 is ripe because the challenged administrative proceeding is underway.[21]  The Court held that the claim regarding NGA § 24 was not ripe because the relief Plaintiffs request is largely anticipatory, and success in this suit would not legally require FERC to alter its administrative procedures.[22]  Plaintiffs explain they are incurring significant litigation expenses.  Plaintiffs contend a declaratory judgment adopting their interpretation of NGA § 24 would encourage

---

[19]    The Court applies its jurisdictional analysis to the proposed Second Amended Complaint below.  *See infra* Section II.D.

[20]    *See* 28 U.S.C. § 2201 ("Any such declaration shall have the force and effect of a *final judgment* or decree and shall be reviewable as such." (emphasis added)).

[21]    Plaintiffs do not seek reconsideration of the Court's conclusions that their constitutional and Administrative Procedure Act ("APA") claims are speculative and contingent upon acts Defendants have not taken.  *See* Opinion [Doc. # 68], at 21–22.

[22]    *See* Opinion [Doc. # 68], at 20–21 ("Plaintiffs concede there is no legal basis for this Court to require FERC to alter these intervening procedures *even if* FERC must eventually prosecute its case *de novo* in a district court.  Plaintiffs fundamentally seek an advisory opinion on the validity of an order the Commission has not yet issued and may never issue." (footnotes omitted)).

6

FERC to shorten the administrative proceeding and would assist Plaintiffs in formulating responses in that proceeding.[23]   Even crediting this argument, Fifth Circuit precedent is clear that a court does not have jurisdiction merely to render a declaratory judgment in order to simplify or avoid future litigation.[24]

Fundamentally, Plaintiffs seek an advance ruling on a jurisdictional defense and other procedural matters that, in their view, will bolster their position in the agency proceedings.[25]   This Court does not have jurisdiction to decide issues for that purpose.

---

[23]     *See* Recon. Motion [Doc. # 73], at 8–10.

[24]     For example, in *Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662 (5th Cir. 1967), the Fifth Circuit considered and categorically rejected similar arguments regarding a preemptive declaratory judgment.  In that case, the plaintiff in district court was aware that its antitrust lawsuit against defendants might give rise to a subsequent suit for malicious prosecution.  Along with its direct claims, the plaintiff requested a declaration that it had probable cause to file the suit.  *Id.*, at 665.  The Fifth Circuit held that the district court was without jurisdiction because "[n]o cause of action for malicious prosecution comes into existence until the termination of the particular judicial proceeding which is the gravamen of the malicious prosecution action."  *Id.* The Fifth Circuit therefore rejected the argument that jurisdiction existed for a declaratory judgement on the probable cause question even though "if it be decided that probable cause existed, the long and complex litigation would come to an end and this Court would be relieved of the burden of considering the other phases of the appeal."  *Id.*, at 666.  This result is consistent with the *Calderon* court's disapproval of using the Declaratory Judgment Act to resolve procedural issues to inform future litigation.  *See* 523 U.S. at 748 ("Any risk associated with resolving the question in habeas, rather than a pre-emptive suit, is no different from risks associated with choices commonly faced by litigants.").

[25]     *See, e.g.*, Recon. Motion [Doc. # 73], at 9 ("Plaintiffs' current and future responses to the current proceeding are dictated by the fact that FERC purports to be the judge of its own allegations."); *id.* ("[T]here is a world of difference to Plaintiffs between a hearing merely to 'investigate' facts . . ., on one hand, and authority both to prosecute *and* adjudicate those violations in-house.").

**B.**   <u>**Jurisdiction**</u>

Plaintiffs continue to ignore the applicability of the *Thunder Basin*[26] framework.  As the Supreme Court reaffirmed in *Elgin*,[27] the Court's task is merely to determine whether there is a "fairly discernible intent" to assign jurisdiction to the agency by examining the statute's text, structure, and purpose.[28]  To avoid their burden of establishing subject matter jurisdiction under the NGA, Plaintiffs posit that NGA § 24 creates district court jurisdiction over proceedings imposing civil penalties under the NGA and then argue the burden falls on Defendants to show a repeal of that provision.  On reconsideration, Plaintiffs again fail to establish their starting premise because they rely on conclusory assertions regarding the NGA that lack basis in precedent and historical practice.

### 1.   Statutes with Comparable Jurisdictional Provisions

Plaintiffs object to the Court's reliance on the absence of precedent supporting their interpretation of NGA § 24 because, according to Plaintiffs, there have been "few opportunities for courts to address the question presented here."[29]  This argument is unavailing.  Plaintiffs overlook the existing precedent regarding this genre of jurisdictional provisions, which precedent explains that these provisions had a purpose different from that urged by Plaintiffs.  As explained in the Court's Opinion, these statutes govern the relationship between federal and state courts.[30]

---

[26]   *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994).

[27]   *Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 2132–33 (2012); *see also Free Enter. Fund v. PCAOB*, 561 U.S. 477, 489 (2010).

[28]   *See* Opinion [Doc. # 68], at 23–26.

[29]   Recon. Motion [Doc. # 73], at 11.

[30]   *See* Opinion [Doc. # 68], at 28–29 n.94.

8

Plaintiffs rely heavily on the presence in the Securities Exchange Act of 1934 of both an "exclusive jurisdiction" provision, § 27(a),[31] and a provision authorizing imposition of civil penalties in administrative proceedings, § 21B.[32] Plaintiffs cite no authority that expresses the view that Exchange Act § 21B makes an exception to the district courts' "exclusive jurisdiction" under § 27 and the Court has found none.[33]  As exemplified by *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*,[34] the case law interpreting Exchange Act § 27 addresses the relationship between state and federal courts.[35]

The Second Circuit's decision in *Touche Ross & Co. v. SEC*,[36] cited by Plaintiffs, is not to the contrary.  The Second Circuit merely rejected an argument based on the Exchange Act § 27 as irrelevant and its observations regarding district

---

[31]     15 U.S.C. § 78aa(a).

[32]     15 U.S.C. § 78u-2.

[33]     *See* Recon. Motion [Doc. # 73], at 11–13.

[34]     578 U.S. __, 136 S. Ct. 1562, 1573 (2016).

[35]     *See, e.g.*, *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1030 (2d Cir. 2014) ("Far from threatening the federal-state balance envisioned by Congress in this area, the exercise of federal jurisdiction here comports with Congress's expressed preference for alleged violations of the Exchange Act, and of rules and regulations promulgated thereunder, to be litigated in a federal forum.  *See* 15 U.S.C. § 78aa(a) (providing federal courts with 'exclusive jurisdiction of violations of [Exchange Act] or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by [Exchange Act] or the rules and regulations thereunder')."); *Piambino v. Bailey*, 610 F.3d 1306 (5th Cir. 1980) ("The state and federal courts have concurrent jurisdiction to decide cases arising under the Securities Act of 1933, and no case originally brought in a state court of competent jurisdiction under that Act may be removed to a federal court. 15 U.S.C. § 77v. Under the Securities Exchange Act of 1934, the federal district courts have exclusive jurisdiction to decide cases arising under that act. 15 U.S.C. § 78aa.").

[36]     570 F.2d 609 (2d Cir. 1979).

9

court jurisdiction are *dicta*.[37]  Even read broadly, *Touche Ross* is not probative of whether "exclusive jurisdiction of violations" applies to agency efforts to address violations through means other than injunctive relief.[38]  Tellingly, Plaintiffs do not rely on *Touche Ross* directly, but rather on descriptions of the decision in individual opinions issued in a highly divided decision by the D.C. Circuit.[39]  The Exchange Act provides insufficient support for the broad reading of NGA § 24 Plaintiffs advance in this action.

### 2.    History of the NGA

Plaintiffs state, "before 2005, FERC complied with the . . . criminal penalty, injunctive relief, and exclusive jurisdiction provisions of the NGA (§§ 20, [21], and 24) by ceding jurisdiction over penalties for violations to federal district courts."[40]  Plaintiffs cite no pre-2005 district court cases under the NGA where FERC (or its predecessor, the Federal Power Commission ("FPC")) sought "penalties for violations," and the Court is unaware of any.  This dearth of

---

[37]    *Id.*, at 579–80 (upholding challenged rule based on broad authority of the Securities and Exchange Commission ("SEC") to adopt rules and regulations necessary for carrying out the agency's designated functions).

[38]    Decided in 1979, *Touche Ross* predates the enactment of the civil penalty provisions in the Exchange Act by over a decade.[38]  Therefore, the *Touche Ross* court only contrasted the challenged SEC rule, which concerned professional conduct in SEC proceedings, with district courts' jurisdiction over actions "to enjoin what the Commission believes to be violations" of the Securities Act of 1933 and the Exchange Act of 1934.  *Id.*, at 579.  The Exchange Act's express allocation to district courts of authority to issue *injunctive relief* is consistent with NGA §§ 20(a) and 24 because NGA § 24 and Exchange Act § 27 both expressly refer to actions for injunctive relief.

[39]    *See* Recon. Motion [Doc. # 73], at 12 (citing *Checkosky v. SEC*, 23 F.3d 452, 456 (D.C. Cir. 1994) (Opinion of Silberman, J.) (citing 1988 version of Exchange Act); *id.*, at 493 (Opinion of Reynolds, D.J.)).

[40]    Recon. Motion [Doc. # 73], at 13.

examples likely is because the Commission did not have authority to seek civil penalties under the NGA prior to 2005.[41]

In contrast, the NGA specifically delineates district court jurisdiction over actions for injunctive relief and criminal prosecutions.[42]   There is no similarly specific statement regarding jurisdiction over civil penalties.   Further, the Commission has a longstanding practice of finding and remedying violations of the NGA through administrative proceedings.

Plaintiffs' attempts to distinguish the Commission's historical practice of finding violations of pre-2005 provisions of the NGA are unavailing.  In support of their interpretation of NGA § 22 (the provision added to the NGA in 2005 by the EPAct[43] authorizing civil penalties[44]) and § 24, Plaintiffs argued that, historically, only district courts had the power to find violations and therefore the Commission lacks jurisdiction to make the predicate finding of a violation necessary to assess a civil penalty under NGA § 22.  In disagreeing, the Court found instructive Fifth Circuit cases affirming Commission findings of violations of the NGA provisions

---

[41]     *See* Opinion [Doc. # 68], at 33 (discussing *Coastal Oil & Gas Corp. v. FERC*, 782 F.2d 1249 (5th Cir. 1986)).   FERC has never argued that NGA § 22, 15 U.S.C. § 717t-1, altered the allocation of jurisdiction over injunctive relief and criminal prosecutions under NGA §§ 20 and 21, respectively.   Historical practice under the FPA and the NGPA is not dispositive because those statutes contain materially different civil penalty provisions enacted decades apart from the NGA civil penalty provision.

[42]     *See* Opinion [Doc. # 68], at 31 n.102 (explaining that "district court involvement under the pre-2005 NGA was narrowly tailored").

[43]     Energy Policy Act of 2005 ("EPAct"), Pub. L. No. 109-58, 119 Stat. 594, 685–93, §§ 311–318.

[44]     15 U.S.C. § 717t-1, enacted by EPAct, § 314(b)(1)(B), 119 Stat. at 691.

governing ratemaking (NGA § 4), abandonment (NGA § 7(b)), and certification of certain activities (NGA § 7(c)).[45]

To distinguish these Fifth Circuit cases, Plaintiffs assert that "[i]t would make no sense for parties to challenge FERC's authority to adjudicate a statutory violation in situations where proof of such a violation is neither necessary nor sufficient to the lawfulness of FERC's adjudication."[46]   As explained below, this contention ignores the fact that the Commission in these cases was not merely reviewing proposed new rates, determining whether to approve abandonment, or issuing a certificate of public convenience.   In each instance, the Commission acted expressly to remedy retrospectively violations of NGA provisions and FERC's procedures governing those issues.   The Court therefore determined that there was a "fairly discernible intent" to expand the Commission's "toolbox" by adding authority to assess civil penalties.   The Court declines to reconsider its interpretation of those cases for the following reasons.

***Ratemaking.***— Plaintiffs contend that the Commission has broad authority to order refund payments under the portion of NGA § 4(e).   Plaintiffs quote language authorizing the Commission "to hold 'a hearing concerning the lawfulness of' any 'rate' charged by the company and '*to order such natural-gas company to refund*, with interest, the portion of' the 'increased rates or charges *by its decision* found not justified.'"[47]   Nothing in NGA § 4, including § 4(e)

---

[45]     *See* Opinion [Doc. # 68], at 32–33 & nn. 103–05.

[46]     Recon. Motion [Doc. # 73], at 16.

[47]     Reconsideration Motion [Doc. # 68], at 14 (quoting NGA § 4(e), 15 U.S.C. § 717c(e)) (emphasis added by Plaintiffs)).   Plaintiffs take the quoted language out of context.   NGA § 4(e) authorizes the Commission to hold a hearing "concerning the lawfulness" of a "new schedule" of rates.   By statute, however, the Commission may only suspend the new schedule for five months.   The language
(continued…)

explicitly grants the Commission jurisdiction to find the existence of a violation of the NGA.

In *Transcontinental Gas Pipe Line v. FERC*, the Fifth Circuit determined that the Commission had acted within its "equitable powers."[48]  The Commission denied a natural gas company an opportunity to recoup certain losses the company had incurred *because* the company had *violated* the NGA.  The Fifth Circuit held the denial was an appropriate remedy based on the Commission's findings that the company had violated NGA §§ 4(b), 4(d), and 7.  Under Plaintiffs' interpretation of NGA § 24, the language of NGA § 4 would not be sufficient to create an exception to the "exclusive jurisdiction" provision in NGA § 24.  Applying Plaintiffs' interpretation, the Commission should have had to resort to a district court for an adjudication of the underlying violations before it could base a remedy on them.  *Transcontinental Gas Pipe Line* is therefore evidence that NGA § 24 has not been interpreted as broadly as Plaintiffs contend.

*Abandonment.—*  Plaintiffs argue that the Commission order affirmed in *Mesa Petroleum v. FPC*[49] is distinguishable because it was based on the Commission's "adjudicatory jurisdiction" over abandonment of natural gas facilities.   NGA § 7(b) only explicitly authorizes the Commission to grant

---

(continued…)
on which Plaintiffs rely concerns *only* implementation of such a new schedule if the Commission has not concluded the hearing at the end of five months.  The Commission exercised this authority in *Transcontinental Gas Pipe Line* only to the extent the natural gas company had already sought to recoup its losses via implementation of the pass-through while the hearing was pending.  *See* 998 F.2d at 1317.

[48]    998 F.2d 1313, 1320 (5th Cir. 1993).

[49]    441 F.2d 182 (5th Cir. 1971)

"permission and approval . . . after a due hearing."   NGA § 7(b) only expressly references findings regarding the depletion of natural gas "to the extent that the continuance of service is unwarranted" and regarding whether "present or future public convenience or necessity permit such abandonment."   Nothing in NGA § 7(b) explicitly authorizes the Commission to find that a "violation" occurred. Under Plaintiffs' view of "exclusive jurisdiction" under NGA § 24, therefore, the language of NGA § 7(b) would not support a "carve out" for the issue of whether the abandonment prior to the institution of an NGA § 7(b) proceeding violates the NGA and warrants retroactive relief.   Nevertheless, the Fifth Circuit has affirmed Commission orders imposing remedies for that violation in *Mesa Petroleum* and *Coastal Oil & Gas*.[50]

*Certification.*— Plaintiffs argue that NGA § 7(c) provides authority to adjudicate because it "authorizes FERC to hold a hearing to grant or deny natural gas companies certificates to engage in certain activities related to the sale of natural gas."[51]   Plaintiffs rely on the Commission's power under NGA § 7(e) "to attach to the issuance of the certificate and to the exercise of the rights granted

---

[50]    In *Mesa Petroleum*, the natural gas company abandoned sale of natural gas under certain contracts *prior* to filing an application with the Commission under NGA § 7(b).  *See* 441 F.2d at 184.  The Commission ultimately found the abandonment improper and imposed a refund order dating back to the date of the abandonment. The Fifth Circuit affirmed the refund order primarily relying on the Commission's broad remedial authority under NGA § 16.  The Commission also noted that NGA § 7(b) had been interpreted to imply certain remedial authority.  Similarly, in *Coastal Oil & Gas Corp. v. FERC*, the Commission affirmed an ALJ's finding "that Coastal had violated § 7(b) of the Natural Gas Act by selling the gas intrastate without first obtaining authorization from FERC to abandon interstate service."  782 F.2d 1249, 1251 (5th Cir. 1986).  The Fifth Circuit explained that the Commission had authority to impose equitable remedies to rectify the violation.

[51]    Recon. Motion [Doc. # 73], at 15.

14

thereunder such reasonable terms and conditions as the public convenience and necessity may require." Nowhere, however, do NGA § 7(c) or § 7(e) explicitly state that the Commission has jurisdiction to remedy violations of the terms of the certificate. Such a violation appears to be within Plaintiffs' interpretation of NGA § 24's term "exclusive jurisdiction of violations of this chapter, or the rules, regulations, and *orders* thereunder." In *Cox v. FERC*,[52] however, the Fifth Circuit affirmed the Commission's finding that certain parties had "sold uncertificated 20% gas in interstate commerce in violation of the Natural Gas Act" and remedy of "return[ing] diverted gas in kind to the interstate market." Plaintiffs maintain that the Commission was acting within its certification authority when it reopened a certification hearing to impose this remedy. Plaintiffs fail to explain how, if their expansive interpretation of NGA § 24 is correct, remedying a violation or compelling compliance with NGA § 7(c) or the terms of a certificate issued thereunder is within the Commission's jurisdiction.

*Conclusion on Historical Practice.*— In sum, Congress did not expressly create an exception to NGA § 24's "exclusive jurisdiction" language in NGA §§ 4 and 7. Nevertheless, the Fifth Circuit repeatedly has affirmed Commission findings that natural gas companies "violated" the NGA. The Court of Appeals has approved equitable remedies to rectify those violations. There is no indication that the courts perceived NGA § 24 to have any bearing on the scope of the Commission's authority to find these violations. The Commission's historical practice and the Courts of Appeals' endorsement directly contradicts Plaintiffs' argument that NGA § 24 requires Congress explicitly to grant authority to the Commission to determine the existence of "violations" of the NGA.

---

[52]    581 F.2d 449 (5th Cir. 1978).

Additionally, Plaintiffs' interpretation of NGA § 24 would create an inefficient procedure for remedying violations of NGA §§ 4 and 7.  It is clear that the Commission may now assess civil penalties for violations of these sections of the NGA.  Even though the Commission has established authority to determine the existence of violations of these provisions and to impose appropriate equitable remedies, Plaintiffs request that this Court hold that the Commission would be required to institute a separate proceeding in district court to assess civil penalties for the same violations.   It is unlikely that Congress intended such a counterintuitive outcome.  Rather, it is "fairly discernible" that NGA § 22 should be read as an expansion of the Commission's remedial authority within the administrative process.  The text, structure, and purpose of the NGA, read as a whole, demonstrate a "fairly discernible intent" to enhance, not avoid, the administrative process.

### 3.    Other Arguments Regarding Text, Structure, and Purpose of the NGA

Plaintiffs object to certain portions of the Court's interpretation of the text, structure, and purpose of the NGA.[53]   The Court finds these objections unpersuasive.

*Lack of Express Authority to Adjudicate.*— Plaintiffs contend that the Court's comparison of NGA § 22 to Federal Deposit Insurance Act ("FDIA") § 8($i$)[54] was error because the FDIA does not contain an "exclusive jurisdiction" provision.   This argument misconstrues the purpose of the comparison to the FDIA's civil penalty provision.  A fundamental premise of Plaintiffs' interpretation

---

[53]     Plaintiffs do not move for reconsideration of the Court's application of the *Thunder Basin* factors to their constitutional and APA claims.

[54]     12 U.S.C. § 1818($i$).

of the NGA is that the phrase in NGA § 22 that "[t]he penalty shall be assessed by the Commission after notice and opportunity for public hearing" does not grant the Commission jurisdiction to determine whether the respondent violated the NGA. Plaintiffs claim the dispute at bar presents the question:

> whether Congress, when it newly provided for 'civil' penalties without specifying the forum for adjudication after the agency has assessed a proposed penalty under NGA § 22, intended to repeal NGA § 24's categorical command of exclusive federal court jurisdiction of NGA violations.[55]

Although a finding of a violation is a predicate to imposition of a penalty under FDIA § 8(*i*), that provision, like NGA § 22, simply states that the penalty will be "assessed" by the agency.[56]   In the FDIA, authority to "assess" includes jurisdiction to "adjudicate."[57]   Plaintiffs' suggest that the Court must determine "the forum for adjudication after the agency has assessed a proposed penalty under NGA § 22."[58]  As in the FDIA, there is no indication in the NGA that the forum for adjudication is anything other than the forum in which the penalty is assessed. Plaintiffs have presented no authority supporting a narrower interpretation of the term "assess."[59]

---

[55]   Recon. Reply [Doc. # 77], at 6–7.

[56]   FDIA § 8(*i*)(2)(A), 12 U.S.C. § 1818(*i*)(2)(A).

[57]   *See* Opinion [Doc. # 68], at 34 n.109.

[58]   Recon. Reply [Doc. # 77], at 6.

[59]   *See* Opinion [Doc. # 68], at 34 n.109.

***NGA §§ 14 and 16.*—** Plaintiffs characterize the Court's analysis of NGA §§ 14[60] and 16[61] as a holding that "FERC's authority to 'administer the entire process for assessment of civil penalties' could be inferred from its general investigatory and regulatory authority under NGA §§ 14 and 16."[62]   This improperly oversimplifies the Court's ruling.  Instead, these provisions show that the NGA contained a framework for administrative investigation, determination, and remediation of violations.  The Court found a "fairly discernible intent" to *add* the civil penalty process to an existing administrative structure by granting the Commission authority to "assess" penalties for violations of the statute the Commission has administered broadly for decades since its enactment.[63]   There is no basis to alter this conclusion.

***Relevance of the Addition of NGA § 20(d).*—** Plaintiffs contest the Court's reasoning that the addition of NGA § 20(d)[64] through the EPAct is evidence that Congress was aware of the district court's jurisdiction but chose not to invoke it for NGA § 22.  Plaintiffs maintain that NGA § 20(d) "used the existing framework to

---

[60]   15 U.S.C. § 717m (authorizing FERC to undertake investigations "in order to *determine* whether any person *has violated* or is about to violate any provisions of this chapter" (emphasis added)).

[61]   15 U.S.C. § 717*o* ("The Commission shall have power to perform any and all acts, and to prescribe, issue, make, amend, and rescind such orders, rules, and regulations as it may find necessary or appropriate to carry out the provisions of [the NGA].").

[62]   Recon. Motion [Doc. # 73], at 19.

[63]   *See* Opinion [Doc. # 68], at 35–36.

[64]   15 U.S.C. § 717s(d) ("In any proceedings under subsection (a) of this section [§ 717s(a)], the court may prohibit . . . any individual who is engaged or has engaged in practices constituting a violation of section 717c-1 . . . from— (1) acting as an officer . . . of a natural gas company . . . ."); *see* Opinion [Doc. # 68], at 35 & n.111.

expand the district courts' injunctive authority," but "there was no existing NGA civil penalty framework into which Congress might incorporate the civil penalty portion of the 2005 amendments."[65]   This argument ignores the structure of comparable provisions in the Exchange Act.[66]

When Congress created district court jurisdiction to impose civil penalties for violations of the Exchange Act, it did so by amending Exchange Act § 21(d),[67] which is functionally identical to NGA § 20.   Both Exchange Act § 21(d) and NGA § 20 authorize injunctive relief to enjoin acts and practices that constitute violations of the Act[68] and to prohibit certain persons from serving as officers and directors.[69]   Had Congress intended to assign the NGA civil penalty process to the

---

[65]   Recon. Motion [Doc. # 73], at 20.

[66]   15 U.S.C. § 78u(d).

[67]   *See* Securities Enforcement Remedies and Penny Stock Reform Act of 1990, Pub. L. No. 101-429, §§ 201–202, 104 Stat. 931, 936–38.

[68]   *Compare* Exchange Act § 20(d)(1), 15 U.S.C. § 78u(d)(1) ("Whenever it shall appear to the Commission [SEC] that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the [Exchange Act]" the Commission may bring an action in "the proper district court of the United States . . . to enjoin such acts . . . ."), *with* NGA § 20, 15 U.S.C. § 717s(a) ("Whenever it shall appear to the Commission [FERC] that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the [NGA]" the Commission may bring an action in "the proper district court of the United States . . . to enjoin such acts . . . .").

[69]   *Compare* Exchange Act § 21(d)(2), 15 U.S.C. § 78u(d)(2) ("In any proceeding under paragraph (1) of this subsection [§ 78u(d)(1)], the court may prohibit . . . any person who violated section 78j(b) . . . from acting as an officer or director of any issuer that has a class of securities registered pursuant to section 78l of this title or that is required to file reports pursuant to section 78o(d) of this title . . . ."), *with* NGA § 20(d), 15 U.S.C. § 717s(d) ("In any proceedings under subsection (a) of this section [§ 717s(a)], the court may prohibit . . . any individual who is engaged or has engaged in practices constituting a violation of section 717c-1 . . . from— (1) acting as an officer . . . of a natural gas company . . . .").   The similarity
(continued…)

district courts as in the Exchange Act, Congress could have done so by amending NGA § 20.   Contrary to Plaintiffs' assertion, NGA § 20 provided an "existing framework" for district court jurisdiction, and Congress could have added NGA civil penalties within that structure, parallel to the addition of civil penalties provisions to the Exchange Act.  Congress, however, did *not* do so.  For NGA civil penalties, Congress created a stand-alone provision.  The similarity between NGA § 20(d) and Exchange Act § 21(d)(2) and the *dis*similarity between NGA § 22 and Exchange Act § 21(d)(3) are strong evidence that, in 2005, Congress did not intend NGA § 22 civil penalties to be added to district courts' jurisdiction.

*Venue.*— Plaintiffs argue that it was unnecessary for Congress to identify permissible venues for civil penalty actions because "NGA § 24 *already* specifies venue for enforcement actions."   Plaintiffs apparently refer to NGA § 24's sentence on venue for actions to "enforce any liability or duty created" by the NGA, as the other § 24 venue provision pertains specifically to criminal prosecutions.[70]  The Exchange Act is again informative.  If a defendant fails to pay a civil penalty that has been determined by a district court in an action by the SEC, the SEC may refer the matter to the Attorney General, who may bring a separate

---

(continued…)

between the Exchange Act and the NGA in this regard is evidenced by the connection of NGA § 4A, 15 U.S.C. § 717c-1, to Exchange Act 10(b), 15 U.S.C. § 78j(b).  *See* 15 U.S.C. § 717c-1 ("It shall be unlawful for any entity . . . to use or employ, in connection with the purchase or sale of natural gas or the purchase or sale of transportation services subject to the jurisdiction of the Commission, any manipulative or deceptive device or contrivance (as those terms are used in *section 78j(b) of this title* [15 U.S.C. § 78j(b)] . . . ." (emphasis added)).

[70]     *See* Opinion [Doc. # 68], at 36 & n.114.

suit to enforce the court's order.[71]   This suit to collect is considered an action "to enforce a liability or duty" for purposes of Exchange Act § 27's jurisdiction and venue provisions.[72]   This is consistent with the Court's holding that an "enforcement action" under the NGA would be to collect a civil penalty previously assessed by the Commission in a final order, not the adjudication of the amount of the penalty itself.   There is no venue provision in the NGA to govern the latter, which is the type of civil penalty proceeding Plaintiffs argue Congress intended to create.[73]

*Type of Proceeding.—*  Plaintiffs contend that the Court erred in relying on the absence in the NGA of any description of the district court proceeding that would occur under Plaintiffs' interpretation of NGA § 24.   Plaintiffs suggest that civil penalties under the NGA would be imposed using procedures analogous to those specified by the FPA.   The FPA contains detailed provisions creating two alternative tracks for assessment and collection of civil penalties.   None of these procedures are described in the NGA.   The Court previously considered and

---

[71]   Exchange Act § 21(d)(3)(C)(ii), 15 U.S.C. § 78u(d)(3)(C)(ii) ("If a person upon whom such a penalty is imposed shall fail to pay such penalty within the time prescribed in the court's order, the Commission may refer the matter to the Attorney General who shall recover such penalty by action in the appropriate United States district court.").

[72]   15 U.S.C. § 78u(d)(3)(C)(iv) ("For purposes of section 78aa of this title, actions under this paragraph shall be actions to enforce a liability or a duty created by this chapter.").

[73]   *See* Opinion [Doc. # 68], at 37 ("Defendants have argued persuasively that, after issuance of a final penalty order, FERC may seek judicial enforcement in the district courts through an action 'brought to enforce' a 'liability' under the NGA, but no liability can exist until after a violation has been found by the Commission." (footnote omitted)).

21

rejected the argument that it should imply the FPA procedures into the NGA.[74] Nor does the FPA support Plaintiffs' contention that the default forum under the NGA is the district courts.[75]

*Purpose.*— Plaintiffs contend that the purposes of the EPAct "make[] it all the more implausible that Congress would sharply deviate from decades of law and practice governing FERC enforcement actions without so much as a discussion of

---

[74]    *See* Opinion [Doc. # 68], at 38–39 n.119.  Plaintiffs argue in a footnote that "it would be remarkable if Plaintiffs could be found liable for the hefty penalties authorized by NGA § 22 if their only opportunity to litigate the facts was a hearing at which FERC proposes its penalty." Recon. Motion [Doc. # 73], at 22 n.5.  Plaintiffs do not, however, contend that the administrative procedures offer insufficient process as a constitutional matter.  Plaintiffs' argument here appears unrelated to their constitutional claims, nor has it been independently invoked in support of the constitutional avoidance argument.  To the extent that Plaintiffs argue that "Congress would have at least directed a hearing 'on the record' under NGA § 22 if it meant to carve out an exception to NGA § 24's grant of exclusive jurisdiction to federal district courts," the Court notes that this silence equally could be read as indication that Congress did not understand NGA § 22 to be related to NGA § 24 at all.  Indeed, NGA § 16(e) requires the Commission to keep "appropriate records" of any hearing before the Commission.

[75]    Plaintiffs continue to mischaracterize the structure of the civil penalties provision of the Federal Power Act ("FPA"). *See, e.g.*, Recon. Reply [Doc. # 77], at 7, 11. Under the FPA, the default procedure for assessment of civil penalties is through the administrative process.  A respondent must expressly *opt out* of that procedure in favor of a proceeding in a district court.  *See* 16 U.S.C. § 823b(d)(2) ("In the case of the violation of a final order issued under subsection (a) of this section, or *unless* an election is made within 30 calendar days after receipt of notice under paragraph (1) to have paragraph (3) apply with respect to such penalty, the Commission shall assess the penalty . . . .").  Further, unlike Plaintiffs' interpretation of NGA §§ 22 and 24, the FPA does *not* authorize *two* hearings regarding the same violation.  The absence in the NGA of the choice between the default of an administrative proceeding and the alternative of a district court proceeding is not evidence that Congress intended to assign the NGA civil penalty process exclusively to the district courts.  If anything, the NGA's structure implies the inverse: that Congress decided not to permit respondents to opt out of the administrative process under the NGA.

the change."[76]   Plaintiffs again rely on their faulty premise of "historical practice." There is no evidence of the "decades of law and practice" they reference.[77]

*Constitutional Avoidance.*—   Plaintiffs argue that the Court should favor their interpretation of NGA § 24 because it avoids the constitutional issues that form the basis of their claims for declaratory relief under the Appointments Clause and the Fifth and Seventh Amendments.[78]   Plaintiffs continue to rely on speculative assertions about the alleged lack of fairness of the FERC proceedings and Plaintiffs' request for a jury trial.   Tellingly, Plaintiffs do not here address the Court's conclusion that these claims were unripe.[79]

Application of the canon of constitutional avoidance is premature. Typically, the canon comes into play when constitutional issues arise that are *currently* justiciable.   Plaintiffs' constitutional claims may be addressed *if* the procedural violations Plaintiffs anticipate occur in the FERC proceeding and *if* Plaintiffs are unsuccessful on the merits.

Further, Plaintiffs' identification of *potential* defects in certain aspects of FERC's procedures is not a reason to interpret NGA §§ 22 and 24 to eliminate the agency's jurisdiction entirely.   Plaintiffs do not argue that the purported Appointments Clause and Fifth Amendment defects arise directly out of the grant of FERC jurisdiction; rather, they complain of specific procedures the Commission has implemented in the exercise of that jurisdiction.   Similarly, as explained in the Opinion, even Plaintiffs' interpretation of NGA § 24 does not guarantee them a

---

[76]     Recon. Motion [Doc. # 73], at 22.

[77]     *See supra* notes 40–42 and accompanying text.

[78]     Recon. Motion [Doc. # 73], at 17.

[79]     *See* Opinion [Doc. # 68], at 21–22.

jury trial.[80]  NGA § 24 is not the source of the purported constitutional infirmities. The dramatic restructuring of the civil penalty process Plaintiffs' interpretation of NGA § 24 would require is an overbroad and premature solution to discrete potential procedural issues.

    ***Conclusion on* Thunder Basin *Analysis.*—** Plaintiffs have not established grounds for alteration of the Court's conclusions in its Opinion that it lacks jurisdiction over the claims asserted.

## C.    Discretionary Analysis Applicable to Action Seeking Solely Declaratory Relief

    Plaintiffs argue that the Court's holding that it would exercise its discretion to decline to hear their declaratory judgment action was not a true alternative holding.[81]  Not only is this contention contrary to the Court's statements reiterated several times, but it is contrary to law.  The Supreme Court held in *Wycoff* that an agency should be afforded an opportunity to evaluate its jurisdiction, subject to review by the appropriate court of appeals.[82]  Further, the *Trejo* factors[83] counsel

---

[80]    *See id.*, at 22 & n.70.

[81]    Recon. Motion [Doc. # 73], at 23.

[82]    *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237 (1952); *see also* Opinion [Doc. # 68], at 51–52.  Plaintiffs contend that *Wycoff* only applies if the Court lacks jurisdiction under NGA § 24.  Plaintiffs acknowledge that the Supreme Court "held that the DJA procedure could not be used to 'preempt and prejudge' the question whether the plaintiff engaged in intrastate commerce, because that issue was 'committed for initial decision to an administrative body.'"  Recon. Motion [Doc. # 73], at 24.  That question, however, related to the agency's *jurisdiction*, not the merits of the underlying (inchoate) administrative dispute.  *See Wycoff*, 344 U.S. at 239 (explaining that declaratory plaintiff sought to prevent regulation by state agency through a declaration that it was outside its declaration by virtue of being engaged in *inter*state commerce).  *Wycoff* is therefore direct support for this Court's holding that it should exercise its discretion to permit the Commission to rule on issues affecting its jurisdiction in the first instance.

against this Court preempting the Commission's decision on its own jurisdiction where the same jurisdictional question has been presented to and is currently pending before that tribunal.   Plaintiffs cite no cases in which the Declaratory Judgment Act was successfully employed to deprive an agency of authority while an adjudicatory proceeding was pending, much less a case in which a court abused its discretion by declining to do so.

It is inappropriate for the Court to insert itself prematurely into the dispute between FERC and Plaintiffs.  If, as Plaintiffs contend, FERC's case is so weak that no one but FERC itself would believe it,[84] the "substantial evidence" review in a court of appeals should be protection from overreach by the agency.[85]   In contrast, Plaintiffs' proposed court involvement in pending administrative processes will exacerbate the complexity of those proceedings.   The Court, for these reasons, and those in the Opinion, continues to exercise its discretion to decline to entertain Plaintiffs' declaratory judgment action.

---

(continued…)

[83]    *See St. Paul Insurance Co. v. Trejo*, 39 F.3d 585, 590–91 (5th Cir. 1994).

[84]    *See* Recon. Motion [Doc. # 73], at 5 n.1 (suggesting that FERC should "drop[] its enforcement action because it knows it would be unable to convince an audience outside FERC that the action has merit").

[85]    Even the authorities on which Plaintiffs rely support the view that Plaintiffs' challenges should be evaluated through the existing administrative process.  *See, e.g.*, *Touche Ross*, 609 F.2d at 575 ("[A]llegations of agency bias or prejudgment based on ex parte communications are insufficient for injunctive relief and cannot be reviewed until the agency has made an adverse determination and an appeal has been taken raising these claims on the record as a whole . . . .  Until the [SEC] has acted and actual bias has been demonstrated, the orderly administrative procedures of the agency should not be interrupted by judicial intervention."); *id.*, at 582 n.21 (noting potential statutory argument that SEC might lack jurisdiction over one respondent in the case and recommending that the SEC "might want to consider" the argument in the *administrative proceeding*).

25

### D.   <u>Motion for Leave to Amend</u>

Plaintiffs request leave to amend their Complaint again to attempt to cure the justiciability defect under *Calderon*.[86]   Plaintiffs propose to add a request for a declaration that they did not violate the market manipulation provisions of the NGA.   According to Plaintiffs, the addition of this claim will bring the entire dispute to this Court.   For the following reasons, the Court denies Plaintiffs leave to amend.

Plaintiffs contend that they did not have the opportunity to address *Calderon* because Defendants did not raise that case in their briefing.   *Calderon* addresses an issue of subject matter jurisdiction, which the Court must police *sua sponte*.   In *Calderon*, the Supreme Court raised the subject matter jurisdiction issue even though it was not among the questions on which certiorari was granted.[87]   Further, the Court deems Plaintiffs to have been on notice of *Calderon* because its holding was restated in *MedImmune*, a case Plaintiffs repeatedly cited.

Plaintiffs' request to amend is, in any event, futile in light of the Court's other rulings.   Nothing in Federal Rule of Civil Procedure 15 requires a court to exercise its discretion to permit amendment to cure a jurisdictional defect where independent grounds exist for dismissal.

---

[86]   In their Response to the Motion to Dismiss, Plaintiffs did not request leave to amend in the event that the Court granted the Motion to Dismiss.

[87]   *See* 523 U.S. at 745 ("We granted certiorari on both the Eleventh Amendment and the First Amendment issues, 522 U. S. 1011 (1997), but in keeping with our precedents, have decided that we must first address whether this action for a declaratory judgment is the sort of 'Article III' 'case or controversy' to which federal courts are limited." (citing *FW/PBS, Inc. v. Dallas*, 493 U. S. 215, 230–31 (1990))).

26

Further, even if this Court had subject matter jurisdiction over Plaintiffs' claims, the Court concludes it is inappropriate to rule on declaratory judgment claims pursued by Plaintiffs in connection with their pending agency proceeding. Investigations under the NGA are often sensitive, complex, and lengthy.[88]  FERC's procedures for these investigations depend on interaction between the respondent and the agency.   If a respondent had the option of running into court for a declaratory judgment about agency procedures or the merits of the agency's enforcement staff's preliminary contentions, the parties would be entangled in two-front litigation.   Congress provided FERC the discretion to decide whether and how to investigate and, if necessary, to prosecute an action for civil penalties. Plaintiffs' proposed second amendment to its Complaint is futile and leave to amend is denied.

## III.   <u>CONCLUSION</u>

Plaintiffs' interpretation of NGA § 24 may have a superficial appeal. However, once evaluated within the framework required by the Supreme Court's decisions in *Calderon*, *Thunder Basin*, *Free Enterprise Fund*, and *Elgin*, the jurisdictional infirmities of Plaintiffs' declaratory judgment action become apparent.   Plaintiffs' Reconsideration Motion ignores this applicable framework. Furthermore, the Court exercises its discretion to decline to rule on Plaintiffs' declaratory judgment claims.   In sum, Plaintiffs' attempt to read one phrase in NGA § 24 in isolation is rejected.   The Court declines to alter or amend the Opinion.   It is therefore

---

[88]    *See* Opinion [Doc. # 68], at 8–9.

P:\ORDERS\11-2016\1250MReconsideration.docx  160914.1510

**ORDERED** that Plaintiffs Total Gas & Power North America, Inc., Aaron Trent Hall, and Therese Nguyen Tran's Motion to Alter or Amend Judgment or for Leave to File Second Amended Complaint [Doc. # 73] is **DENIED**.

SIGNED at Houston, Texas, this 14th day of **September, 2016**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE

28